UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NMS SERVICES INCORPORATED,
            *Plaintiff-Appellant,*

v.

THE HARTFORD, a/k/a Hartford
Insurance Company of the Midwest,
a/k/a Hartford Fire Insurance
Company,
            *Defendant-Appellee.*

JOHN D. POWELL,
            *Movant.*

No. 01-2491

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-01-667-A)

Argued: September 24, 2002

Decided: April 21, 2003

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

---

Reversed and remanded by unpublished opinion. Judge Gregory
wrote the opinion. Judge Widener wrote a concurring opinion. Judge
Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Alan Rosenblum, ROSENBLUM & ROSENBLUM,
Alexandria, Virginia, for Appellant. George Edwin Reede, Jr.,

NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Robert S. Reverski, Jr., NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

GREGORY, Circuit Judge:

NMS Services, Inc. ("NMS"), a software development company, brought suit against The Hartford Fire Insurance Company ("Hartford"), seeking coverage for claims made under NMS's insurance policy. Hartford subsequently filed a motion for summary judgment, which the district court granted. We reverse and remand to the district court.

I.

NMS is a software development company whose business is to manufacture and sell Sales Force Automation and Call Center Management software to the telemarketing industry. Its operations are fully computerized. NMS's property was insured by Hartford under a Special Property Coverage Form ("Special Property Form"), which provided basic property coverage, and a Computer and Media Endorsement ("Endorsement"), which provided optional computer coverage.

On July 22, 2000, NMS discovered that its computer systems had sustained considerable damage, including the erasure of vital computer files and databases necessary for the operation of the company's manufacturing, sales, and administrative systems. It was later determined that the damage was caused by a hacker who gained access to the network during the evening of July 21, 2000. The hacker was John Powell, who was employed by NMS as a technical systems adminis-

trator until he was terminated on May 30, 2000. Unbeknownst to NMS, Powell had installed two hacking programs on NMS's network systems while he was still employed at NMS. Those programs that Powell installed allowed him to gain full access to NMS's systems by overriding security codes and unencrypting secured passwords, thus enabling Powell to cause the damage discovered on July 22, 2000.

NMS filed a claim with Hartford for recovery under its insurance policy, which Hartford denied. NMS brought an action for declaratory judgment against Hartford in the Circuit Court of Fairfax County, Virginia. The action was removed to the United States District Court for the Eastern District of Virginia based upon diversity of citizenship. NMS amended its complaint, requesting damages in the amount of $350,000 and attorney's fees. NMS then moved for partial summary judgment, and Hartford filed a cross-motion for summary judgment. The district court, finding that there was no coverage under the policy, granted Hartford's motion for summary judgment. This appeal followed.

## II.

This Court reviews grants of summary judgment *de novo*. *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

NMS assigns error to the district court's finding that because NMS entrusted Powell with its property, the dishonesty exclusion provisions under the Special Property Form and the Endorsement precluded coverage. In reviewing the district court's grant of summary judgment, we examine the insurance policy to determine the effect of the dishonesty exclusions under the Special Property Form and the Endorsement on NMS's coverage.

A.

NMS's coverage under the Special Property Form is limited by the dishonesty exclusion, which states:

> We will not pay for loss or damage caused by or resulting from:
>
> **Dishonesty**: Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
>
> (1)   Acting alone or in collusion with others; or
>
> (2)   Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

Form, ¶ B(2)(e) (emphasis in original). The district court held that NMS placed its computer systems "in the entrustment of the former employee [Powell] for their care and performance during his tenure." *NMS Servs., Inc. v. The Hartford Fire Ins. Co.*, Civil Action 01-667-A (E.D. Va. Dec. 7, 2001). The district court found that because Powell was entrusted with NMS's property while still employed at NMS, NMS was precluded from coverage by the dishonesty exclusion of the Special Property Form. If the district court's reasoning was correct, then any dishonest or criminal act committed by an employee (or former employee) that damaged property would preclude coverage if that employee had also been entrusted with the property. Such an interpretation would render the exception meaningless. Most employees, to some extent, are entrusted with property, but not all persons entrusted with property are employees. Therefore, where the entrusted person is also an employee, both the dishonesty exclusion clause prohibiting coverage for "dishonest or criminal acts by an employee" and the exception to the exclusion apply.

It is undisputed that Powell installed the software which allowed him to destroy NMS's data while he was still an employee of NMS. Powell's actions on July 21, 2000, were the final step in carrying out his plan. Without the installation of the software, Powell could not have destroyed the data. The substantial portion of Powell's actions took place while he was still an NMS employee, making Powell, for purposes of the dishonesty exclusion of the Special Property Form, an employee who committed a dishonest or criminal act. However, NMS's property was not only damaged, but was completely destroyed by an employee, Powell, which triggers the exception to the dishonesty exclusion of the Special Property Form. Under the exception, acts of destruction by employees do not preclude coverage. Form, ¶ B(2)(e). Therefore, we find that the dishonesty exclusion of the Special Property Form does not preclude NMS's coverage under the Special Property Form.

### B.

The dishonesty exclusion of the Endorsement mirrors the dishonesty exclusion of the Special Property Form, however, it does not include the exception language found in the Special Property Form. Without that language, whether Powell committed a dishonest or criminal act as an NMS employee or as someone to whom NMS entrusted its property, the dishonesty exclusion precludes coverage under the Endorsement. Therefore, we affirm the district court's finding that NMS has no coverage under the Endorsement.

### IV.

Having found that the dishonesty exclusion does not preclude NMS's coverage under the Special Property Form, we now examine the relevant provisions of the Special Property Form to determine the scope of NMS's insurance coverage.

First, NMS has coverage under the Business Income Additional Coverage ("Business Income") provision. Under that provision, Hartford "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by *direct physical loss of or damage* to property at the described premises . . . ." Form,

¶ A(5)(k) (emphasis added). Such coverage is only available when the loss or damage is caused by or results from any "Covered Cause of Loss." There is no question that NMS suffered damage to its property, specifically, damage to the computers it owned, and this Court has already concluded that the damage constitutes a covered cause of loss. Accordingly, we find that NMS has coverage under the Business Income Additional Coverage provision of the Special Property Form.

Second, NMS has coverage under the Additional Coverage for Extra Expense provision. That provision covers costs incurred during the restoration period that would not have been incurred if there were no direct physical loss of or damage to the property. *See* Form ¶ A(5)(l). Like the Business Income Additional Coverage provision, Additional Coverage for Extra Expense is only available if the damage was caused by or resulted from a "Covered Cause of Loss." *Id.* Because NMS suffered damage to its property and its loss constitutes a covered cause of loss, we find that NMS has coverage under the Additional Coverage for Extra Expense provision of the Special Property Form.

Finally, NMS has coverage under the Coverage Extension: Valuable Papers and Records-Cost of Research provision of the Special Property Form. That provision states that the insured "may extend the insurance that applies to Business Personal Property to apply to your [the insured's] costs to research, replace or restore the lost information on lost or damaged 'valuable papers and records,' including those which exist on electronic or magnetic media, for which duplicates do not exist." Form, ¶ A(6)(e). "Valuable papers and records" are "inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages. But 'valuable papers and records' does not mean 'money and securities,' converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded." Form, ¶ G(8). Because the destroyed property is a "record" within the definition of "valuable papers and records," we find that NMS is covered under this provision of the Special Property Form.

## V.

In conclusion, we find that NMS has coverage under the Special Property Form and therefore reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.*

*REVERSED AND REMANDED*

WIDENER, Circuit Judge, concurring:

I concur in the majority opinion but I would add a word. The insuring clause of the policy requires a "direct physical loss."

The Special Property Coverage Form states in paragraph A(3) that for something to constitute a "Covered Cause[ ] of Loss" it must be a "direct physical loss," unless excluded in Section B or limited in paragraph A(4). My concurrence is dependent on the fact that, when the employee erased the data on NMS's computers, this erasure was in fact a "direct physical loss" under the requirements of the policy. Indeed, a computer stores information by the rearrangement of the atoms or molecules of a disc or tape to effect the formation of a particular order of magnetic impulses, and a "meaningful sequence of magnetic impulses cannot float in space." *Comptroller of the Treasury v. Equit. Trust Co.*, 296 Md. 459, 484 (C.A. Md. 1983). It is the fact that the erasure was a "direct physical loss" that enables NMS to recover under the policy and enables me to concur.

NIEMEYER, Circuit Judge, dissenting:

Because the losses sustained in this case by NMS Services, Inc. involved damage to its computer programs and data and were the product of a scheme by one of its disgruntled employees who was intent on causing NMS Services, Inc. harm, the losses were not, in my judgment, covered by the policy of insurance issued by The Hartford Fire Insurance Company to NMS Services. That policy included a

---

*We decline to address NMS's claims for attorney's fees, leaving that issue to be resolved by the district court at the appropriate time.

specific endorsement addressing coverage for "computers and media" which indicated that coverage under the policy for losses involving computers must be provided under the endorsement. That endorsement provides that it "modifies" the underlying policy by adding coverages and exclusions. One of the additional exclusions added by the endorsement excludes coverage of any loss "caused by or resulting from [the] dishonest or criminal acts by . . . any of your . . . employees . . . or anyone to whom you entrust the property." Because I believe this exclusion is applicable, I would affirm the judgment of the district court.