PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STUDIO FRAMES LTD., d/b/a
Somerhill Gallery,
                    *Plaintiff-Appellant,*

v.

THE STANDARD FIRE INSURANCE
COMPANY,
                    *Defendant-Appellee,*

and

VILLAGE INSURANCE AGENCY,
INCORPORATED; BUSINESS INSURERS OF
CAROLINA, LLC; PHILIP D. PEARSALL;
TRAVELERS PROPERTY CASUALTY
INSURANCE COMPANY,
                    *Defendants.*

No. 03-1674

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-01-876)

Argued: February 27, 2004

Decided: May 21, 2004

Before LUTTIG and MICHAEL, Circuit Judges, and
William D. QUARLES, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Affirmed in part, reversed in part by published opinion. Judge Luttig
wrote the opinion, in which Judge Michael and Judge Quarles joined.

**COUNSEL**

**ARGUED:** John Albert Michaels, MICHAELS & MICHAELS, Raleigh, North Carolina, for Appellant. Gerald Joseph Nielsen, Metairie, Louisiana, for Appellee. **ON BRIEF:** Walter E. Brock, Jr., YOUNG, MOORE & HENDERSON, P.A., Raleigh, North Carolina, for Appellant.

---

**OPINION**

LUTTIG, Circuit Judge:

Appellant, Studio Frames Ltd., d/b/a Somerhill Gallery, is a fine art gallery located in the Eastgate Shopping Center in Chapel Hill, North Carolina. Studio Frames leases its gallery location from the owner of the shopping center, but has made improvements to the space, known as "leasehold improvements," to make it suitable for use as an art gallery.

In October 1996, as a condition of an emergency loan from the Small Business Administration, Studio Frames was required to purchase federal flood insurance under the National Flood Insurance Program (NFIP), 42 U.S.C. § 4001 *et seq*., to provide coverage both for the leasehold improvements it had made to its rental space and for the contents of its gallery. It did so a month later through appellee Standard Fire Insurance Company ("Standard Fire"), an authorized carrier of federal flood insurance under the Federal Emergency Management Agency's (FEMA) "Write Your Own" or "WYO" program. *See* 42 U.S.C. §§ 4071(a), 4081; 44 C.F.R. §§ 62.23, 62.24. Like all flood insurance purchased through the NFIP, *see* 44 C.F.R. § 61.4(b), the terms of Studio Frames' policy were set forth in the Standard Flood Insurance Policy (SFIP), codified in FEMA's official regulations at 44 C.F.R. § 61, App. A(2). The policy purchased by Studio Frames provided coverage of up to $194,700 for flood damage to the portion of the shopping center occupied by Studio Frames (or "building coverage," identified in the SFIP as "Coverage A"), and $287,200 for flood damage to the contents of the gallery (or "contents coverage," identified in the SFIP as "Coverage B"). Over the next four years,

Studio Frames paid a premium for the policy that reflected the combined cost of both coverage limits. *See* J.A. 134, 135, 136.

On July 23-24, 2000, Studio Frames suffered severe flood damage to its gallery, including to its leasehold improvements, and to the gallery's contents. It contacted Standard Fire almost immediately thereafter to report the damage. Standard Fire, in turn, arranged for an adjuster, Leo Soucy, to visit the premises, which he did three days later on July 26, 2000. In the course of his visit, Soucy learned that Studio Frames leased, rather than owned, the portion of the shopping center that housed its gallery, and that Federal Realty Trust Investments, Inc., the owner of the shopping center, maintained a federal flood insurance policy that covered the entire building, including the Studio Frames gallery. J.A. 218. On the basis of these discoveries, Soucy informed Studio Frames that the building coverage, for which Studio Frames had paid premiums for four years, was invalid under the SFIP because Studio Frames did not own the building. J.A. 49. Soucy explained further that, in his view, Art. 4 of the SFIP, J.A. 142 (Coverage B § E), limited a tenant's recovery for damages to its "leasehold improvements" to 10% of the total amount of the tenant's 'content' coverage, in this case $28,700. J.A. 98. Consistent with Soucy's representation, Standard Fire attempted to refund to Studio Frames the premium it had paid for building coverage in the past year on August 21, 2000, J.A. 218; and, on September 11, 2000, Standard Fire informed Studio Frames by letter that, "[u]nder the Standard Flood Insurance Policy and [sic] insured/tenant cannot purchase building coverage on a building he does not own." J.A. 208.

As required by Art. 8 § O(3) of the SFIP, J.A. 149, Studio Frames next filed a "proof of loss" with Standard Fire on September 20, 2000, itemizing and valuing its losses due to the flood, and ultimately claiming total losses in excess of the policy limit of $287,200 for contents coverage. J.A. 224-25. The "proof of loss," comprehensive in all other respects, did not include damage that would have been covered under the SFIP's building coverage; instead, it provided only that Studio Frames "reserved the right . . . to file an additional Proof of Loss for leasehold improvements coverage." J.A. 225. Studio Frames did not subsequently file an additional proof of loss, however, a decision that its counsel now asserts was made "consciously and intentionally"

because Standard Fire had already breached the contract of insurance. J.A. 251.

On September 22, 2000, Standard Fire accepted Studio Frames' proof of loss as complying with the "policy conditions and provisions" of the SFIP, but rejected the values that Studio Frames attached to its losses. J.A. 153. After several months of negotiations, Standard Fire eventually determined that Studio Frames suffered flood damage compensable under the SFIP's contents coverage (Coverage B) in the amount of $143,336.27 and, on January 3, 2001, issued a check to Studio Frames for $93,336.27 ($143,336.27 less $50,000 that Standard Fire had released to Studio Frames at an earlier date). As is relevant to this appeal, this final determination of coverage included $28,700 in recompense for leasehold improvements, as required by section E of the SFIP's contents coverage (Coverage B), J.A. 142, but provided no compensation under its building coverage (Coverage A). J.A. 216. The calculation also excluded, as not covered by the SFIP, the value of certain promotional materials (art cards, slides, and transparencies) that were damaged in the flood.

Within a year of being notified that its claim was partially denied, Studio Frames brought suit in federal district court to challenge Standard Fire's denial of coverage for flood damage to both its leasehold improvements and promotional materials. The district court dismissed Studio Frames' claim at summary judgment. As to the leasehold improvements, the court ruled that Studio Frames was barred by the terms of the SFIP from sustaining a challenge to Standard Fire's denial of coverage because it failed to file a proof of loss detailing the damage to this property. J.A. 235-39; *see also* J.A. 151 (SFIP Art. 8, § T). And, concerning the promotional materials, the court agreed with Standard Fire that the materials were properly characterized as "valuable papers" and, for that reason, beyond the coverage of the SFIP. J.A. 243-45. Studio Frames appealed the district court's judgment in both respects.

## I.

Although the parties have not briefed the issue and the district court did not consider it, we must establish in the first instance that we have subject matter jurisdiction over this case. *See American*

*Canoe Ass'n* v. *Murphy Farms, Inc.*, 326 F.3d 505, 516 (4th Cir. 2003) (explaining that subject matter jurisdiction is the basis for the "very legitimacy of a court's adjudicatory authority"). Studio Frames, alone among the parties, provided a jurisdictional statement in its brief, but we have specifically reserved the question of whether its asserted basis for jurisdiction, 42 U.S.C. § 4072, is sound. *Battle* v. *Seibels Bruce Ins. Co.*, 288 F.3d 596, 606 (4th Cir. 2002) (declining "to tackle the difficult statutory construction question" of whether 42 U.S.C. § 4072 provides the federal courts with "original, exclusive jurisdiction" over NFIP claims against a WYO carrier). And, indeed, there is substantial disagreement among the circuits as to whether section 4072 establishes "original exclusive jurisdiction" over claims, such as this one, brought by an insured against the WYO carrier through whom it acquired flood insurance, as opposed to "an action institute[d] *against the Director*" of FEMA. *See* 42 U.S.C. § 4072 (conferring "original and exclusive jurisdiction" upon the federal courts to "hear and determine" claims instituted by claimants under section 4071 "against the Director").[1]

We once again decline to decide this question because, in this case, even more clearly than in *Battle*, we possess subject matter jurisdiction over Studio Frames' breach of contract claims pursuant to 28 U.S.C. § 1331. *See Battle*, 288 F.3d at 606-09. "Federal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program." *Leland* v. *Fed. Ins. Adm.*, 934 F.2d 524, 529 (4th Cir. 1990). Therefore, Studio Frames' "right to relief" on its claims for breach of contract, both of which hinge on the court's interpretation of a standard form insurance policy issued pursuant to the NFIP and codified in federal regulations, "necessarily

---

[1] *Compare Downey* v. *State Farm Fire & Cas. Co.*, 266 F.3d 675, 680 (7th Cir. 2001) (refusing to "disregard not only the identity of the litigants but also the fact that § 4072 is limited to suits against the Director" and holding that section 4072 does not create jurisdiction for suits against WYO companies) *with Van Holt* v. *Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3d Cir. 1998) (explaining that because "a suit against a WYO company is the functional equivalent of a suit against FEMA," section 4072 must be read as creating jurisdiction over suits against WYO companies) *and Gibson* v. *American Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002) (same).

depends on the resolution of a substantial question of federal law," *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983). *Accord Downey*, 266 F.3d at 682; *Newton* v. *Capital Assur. Co. Inc.*, 245 F.3d 1306, 1309 (11th Cir. 2001); *Van Holt*, 163 F.3d at 167.

Having concluded that we have federal question jurisdiction over this cause of action under 28 U.S.C. § 1331, we turn to the substance of Studio Frames' appeal.

## II.

Studio Frames first argues that the district court erred by refusing to consider its challenge to the denial of coverage for its leasehold improvements because it had failed to file a corresponding proof of loss. Studio Frames acknowledges, as it must, both that the SFIP requires that a proof of loss be filed within sixty days with respect to all damages suffered by an insured, SFIP Art. 6 § (O)(3), and that it never filed a proof of loss for damages to its leasehold improvements. It nevertheless urges that it was excused from this contractual requirement because Standard Fire repudiated the building coverage portion of the SFIP (Coverage A) *prior to* the date on which it was required to have filed a proof of loss.

The district court rejected this argument, believing it to be foreclosed by our recent decision in *Dawkins* v. *Witt*, 318 F.3d 606 (4th Cir. 2003). J.A. 237-39. This was error. Studio Frames does not contend that Standard Fire effectively waived the requirement that it file a proof of loss, or that Standard Fire is estopped by its previous conduct from relying on the proof of loss requirement as a defense.[2] Rather, it asserts that, by its statements and actions, Standard Fire *repudiated* Coverage A of the SFIP altogether and that, as a direct result of this repudiation, it was relieved of the otherwise incumbent

---

[2] The district court was correct in its belief that an argument based on either waiver or estoppel was foreclosed by *Dawkins*. As we held in that case, the conditions that the SFIP places on recovery may not be waived by the insurer, except as the policy itself provides, and the insurer may not be estopped from relying on these conditions as a defense, at least absent extreme misconduct. *See Dawkins*, 318 F.3d at 610-12.

obligation to file a proof of loss before bringing a suit for breach of contract. This argument is separate and distinct from the arguments of waiver and estoppel that we addressed and rejected in *Dawkins*. *See Dawkins*, 318 F.3d at 610-12. Whereas the *equitable* concepts of waiver and estoppel prevent a party from asserting a legal right that is otherwise valid and would be binding on the parties, *see Zipes* v. *Trans World Airlines*, 455 U.S. 385, 398 (1982) (holding that "waiver" is to be invoked "when equity so requires"); *Office of Personnel Management* v. *Richmond*, 496 U.S. 414, 426 (1990), the *legal* doctrine of repudiation (sometimes called "anticipatory breach") provides that, when one party repudiates its obligations under a contract, the unperformed contractual rights and duties of the contract cease to be binding on the non-repudiating party altogether. Restatement (Second) of Contracts § 253(2) & cmt. b (explaining that "one party's repudiation *discharges* any remaining duties of performance of the other party with respect to the expected exchange") (emphasis added). As a leading treatise on the law of contracts makes clear, after one party to a contract repudiates its contractual rights and obligations, the right of the non-repudiating party to recover on the contract without first performing conditions precedent "is given to the non-repudiating party *by the law*, irrespective of the repudiating party's wishes." *Williston on Contracts* § 39:38 (Richard A. Lord, ed., 4th ed. 2000) (emphasis added).

Thus, this case presents a different — and more difficult — question than we considered in *Dawkins*. Here, we must consider, not whether equity forbids Standard Fire from relying on the SFIP's requirement that Studio Frames file a proof of loss (under *Dawkins*, it may not), but instead whether the otherwise binding requirement that Studio Frames file a proof of loss could be legally excused by a repudiation of the SFIP by Standard Fire. We conclude that it could be and, therefore, that the district court erred by dismissing Studio Frames' claim for failing to file a proof of loss for damage to its leasehold improvements without determining first whether Standard Fire repudiated the policy.

To begin, "the law is well settled that federal common law *alone* governs the interpretation of insurance policies [like the SFIP at issue here] issued pursuant to the NFIP." *Battle*, 288 F.3d at 607; *Leland*, 934 F.2d at 529-30. Article 9 of the SFIP — itself part of FEMA's

regulations — makes this clear. Entitled "What Law Governs," it provides that the SFIP is governed "by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 as amended . . . *and Federal common law*." J.A. 152 (emphasis added). Thus, it is absolutely clear that our construction of the SFIP is to be controlled by federal common law.

Equally clearly, the federal courts, applying federal common law to contractual disputes, have long recognized the doctrine of repudiation. *See Roehm* v. *Horst*, 178 U.S. 1, 13 (1900); *Rederiaktiebolaget Atlanten* v. *Aktieselskabet Korn-Og Foderstof Kompagniet*, 252 U.S. 313 (1920); *City of Fairfax* v. *Washington Metropolitan Area Transit Authority*, 582 F.2d 1321, 1325-26 (4th Cir. 1978). In fact, the Supreme Court has affirmed repeatedly, including twice in the past four years, the doctrine's applicability to contracts between the government and private parties. *See Franconia Assoc.* v. *United States*, 536 U.S. 129, 136 (2002); *Mobil Oil Exploration and Producing Southeast, Inc.* v. *United States*, 530 U.S. 604, 607-08 (2000); *Lynch* v. *United States*, 292 U.S. 571, 580 (1934) ("The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen.") (quoting *The Sinking Fund Cases*, 99 U.S. 700, 719 (1878)). Furthermore, to the extent that the development of these governing federal common law principles is informed by "standard insurance law principles," *see Battle*, 288 F.3d at 608 n.17 (providing that such principles "offer federal courts a valuable repository of settled law" on which to base federal common law), courts have consistently recognized that the repudiation of coverage under an insurance policy relieves the insured of the obligation of performing conditions precedent prior to bringing suit for breach of contract. *See Knickerbocker Life Ins. Co.* v. *Pendleton*, 112 U.S. 696, 709-10 (1885); *Conrad Bros.* v. *John Deer Ins. Co.*, 640 N.W.2d 231, 242 (Iowa 2001); *Aetna Ins. Co.* v. *Indiana Nat. Life Ins. Co.*, 133 N.E. 4, 7 (Ind. 1921); *Pino* v. *Union Bankers Ins. Co.*, 627 So. 2d 535, 537-38 (Fl. App. 1994). On the basis of these authorities, we believe it obvious that the flood insurance policy at issue in this case was, on its own terms, subject to repudiation.[3] *See Lynch*, 292 U.S.

---

[3] Standard Fire protests that "because the theory [of repudiation] is not to be found within FEMA's regulations" or the terms of the SFIP, the

at 576 (holding that war insurance policies between the government and citizens "although not entered into for gain, are legal obligations of the same dignity as other contracts of the United States and possess the same legal incidents"). We therefore agree with Studio Frames that, if Standard Fire's refusal to provide building coverage under the SFIP amounted to a repudiation of its policy for flood insurance, Studio Frames' failure to file a proof of loss was not dispositive of its claim.

Standard Fire objects that, pursuant to Art. 8 § T of the SFIP, J.A. 151, an insured's failure to observe the policy's "proof of loss" requirement, SFIP Art. 8 § O(3), serves as an absolute bar to recovery in federal court, regardless of whether its actions may be construed as a repudiation of the policy's building coverage. Article 8 § T of the SFIP provides, in relevant part, as follows:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity *unless all the requirements of this policy shall have been complied with* . . . .

J.A. 151. In Standard Fire's view, the requirement that a proof of loss be filed within sixty days is a "requirement" under the policy, and, consequently, Studio Frames' failure to comply is fatal to its claim. It maintains that any other interpretation of the SFIP could mandate a payment from the federal treasury on terms other than those devised by Congress and thereby violate the Appropriations Clause of the Constitution, U.S. Const. Art. I, § 9, Cl. 7.[4] *See Office of Personnel*

---

application of it in this case is impermissible. Were it true that repudiation had no basis in the policy, Standard Fire may well have a point; however, as established in the text, the SFIP states explicitly that it is to be governed by federal common law and the doctrine of repudiation is part of the federal common law. Thus, contrary to Standard Fire's assertion, we believe it plain on the terms of the SFIP that the SFIP may be repudiated by an insurer.

[4]The Appropriations Clause provides, in relevant part, as follows: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., Art. I, § 9, cl. 7.

*Management* v. *Richmond*, 496 U.S. 414 (1990) (providing that "not a dollar of [the money in the federal Treasury] can be used in the payment of any thing not thus previously sanctioned").

Though this argument has some initial appeal, it ultimately fails on its own terms. Article 8 § T of the SFIP directs that, in order to sustain a claim based on its coverage, the insured must have complied with the "requirements of the policy." *See* SFIP Art. 8 § T. Standard Fire is correct that, in the ordinary course, this means that the failure of an insured to file a proof of loss forecloses an insured from recovery on a policy issued pursuant the NFIP. *See Dawkins*, 318 F.3d at 611. But the same does not hold when an insurer repudiates an NFIP policy *before* the insured was obligated to file a proof of loss with the insurer, because the consequence of a repudiation is that the insured is no longer "required under the policy" to file a proof of loss before bringing suit on the policy. Restatement (Second) of Contracts § 253 cmt. b. Thus, if Standard Fire actually repudiated the policy in this case, Art. 8 § T of the SFIP would not bar Studio Frames from proceeding with its claim due to its failure to file a proof of loss because, in contrast to those cases where the policy has not been repudiated, the filing of a proof of loss has ceased to be a "requirement of the policy."

Having concluded that the policy at issue here may be repudiated, it is left to be determined, of course, whether Standard Fire's statements and actions regarding the SFIP building coverage actually did amount to repudiation. The district court did not consider this question because it incorrectly regarded the failure to file a proof of loss as an absolute bar to recovery under the policy, and we decline to take it up for the first time on appeal.

We do offer some guidance upon remand, however. First, in determining whether Standard Fire repudiated a term of the contract, the district court should bear in mind that a refused performance "need not be express or dependent on 'spoken words' alone; it may rest on a defendant's conduct evidencing a clear intention 'to refuse performance in the future.'" *City of Fairfax*, 582 F.2d at 1327. Second, for there to be repudiation of a contract, the district court must conclude that the contract was binding on the party refusing to perform, *i.e.*, that Standard Fire was mistaken in its belief that the SFIP forbade it

from offering building coverage to Studio Frames. A party to a contract does not repudiate its obligations under that contract by refusing to do that which the contract forbids it from doing. *Cf. Miller* v. *Schwinn*, 113 F.2d 748, 750 (D.C. Cir. 1940). And third, if it is determined that Standard Fire was bound to provide building coverage under the contract, it must be determined whether its refusal to perform that obligation was unequivocal and went to the "very essence of the contract." *City of Fairfax*, 582 F.2d at 1326, 1327; *see also* Restatement (Second) of Contracts § 250.

## III.

Studio Frames next argues that the district court erred by holding certain of its promotional materials to be "valuable papers," within the meaning of the SFIP, and therefore excluded from the policy's coverage by Art. 6 § A(1) of the SFIP. *See* J.A. 239-45. These materials consist of 172 sets of "art cards" used in marketing Studio Frames' current and former collections, an equivalent number of more valuable transparencies from which these art cards were made, and 4800 slides, documenting the gallery's collection over the past twenty-five years. Studio Frames has valued these materials at $172,083.73.

Article 6, Section A(1) of the SFIP, the provision in which the term "valuable papers" appears, provides that the policy shall not cover flood damage to,

> [a]ccounts, bills, currency, deeds, evidences of debt, money, coins, medals, postage stamps, securities, bullion, manuscripts, *other valuable papers or records*, and personal property used in a business.

J.A. 144 (emphasis added). Neither the policy nor FEMA regulations define what is meant by "valuable papers,"[5] but the policy does pro-

---

[5]When the term "valuable papers or records" is defined in insurance policies, it customarily means "inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages." *See*, *e.g.*, *NMS Services Inc.* v. *The Hartford*, 62 Fed. Appx. 511, 515 (4th Cir. 2003) (unpublished); *Whitney Nat.*

vide some guidance as to the meaning of the term. "Valuable papers" is modified by the adjective "other" and coupled with the exclusion of like "records." At the least, this indicates that the SFIP must be interpreted to exclude "valuable papers or records" similar in kind to the items expressly listed above — meaning "valuable papers or records" similar to currency, money, coins, medals, postage stamps, securities, bullion and manuscripts. When the term is so defined, we believe it to be sufficiently broad to encompass the materials at issue here.[6]

The provision, taken as a whole, transfers to the insured the risk of flood damage to valuable property that could be protected from flood damage by the insured itself without great difficulty.[7] To that end, it

---

*Bank of New Orleans* v. *State Farm Fire & Cas. Co.*, 518 F.Supp. 359, 365 (E.D. La. 1981) (similar definition); *Lambrecht & Assoc.* v. *State Farm Lloyd's*, 119 S.W.3d 16, 24 (Tex. App. 2003) (similar definition). Because the promotional materials at issue here consist of a combination of printed documents (the art cards) and films (the transparencies and slides), they would easily fall within such a definition. *Cf. Curran* v. *Merrimack Mutual Fire Ins. Co.*, 1995 WL 104100 (S.D.N.Y.) (explaining that insurance company admitted that business slides were covered under "Valuable Papers and Records Coverage").

[6]Because we hold that the materials at issue in this claim are "valuable papers or records" within the meaning of Art. 6 § A(1) of the SFIP and therefore not covered under the policy, we do not consider Standard Fire's alternative argument that Studio Frames was barred from sustaining its claim because the proof of loss it filed on these materials did not comply with the requirements for such filings set forth in Art. 8 § O(3) of the SFIP.

[7]Consistent with this purpose, insurance policies that do provide coverage for "valuable papers or records" often require those papers to be stored in secure places. *See Snelling & Snelling of Oklahoma City, Inc.* v. *Aetna Cas. and Surety Co.*, 233 F. Supp. 771, 775 (W.D. Ok. 1964) (explaining that "keeping . . . valuable papers and records in metal filing cabinets is a condition imposed upon the plaintiff which if not met would preclude the plaintiff from a recovery"); *American Indemnity Co.* v. *Lancer, Vandroff & Sudakoff*, 452 So. 2d 594, 595 (Fl. App. 1984) (denying coverage under fire insurance policy where valuable papers were not stored in steel file cabinets).

includes not only items that have a high, fixed value, such as currency, money, coins, medals, postage stamps, securities and bullion, but also items whose replacement cost would be difficult to assess, such as accounts, bills, deeds, evidence of debt, and manuscripts.

The art cards, transparencies, and slides that Studio Frames lost in the flood fit comfortably within this list. First, they are "valuable" in the same sense that this latter group of materials would be; like accounts, bills, deeds, and manuscripts, these materials do not have intrinsic or market value but are of unique importance and substantial worth to their owners. Second, as the district court held, they are similar in kind to manuscripts, which are excluded from coverage by the list. Like a manuscript, the promotion-related materials at issue here are vested with value by the artistic contribution of their creators, and consequently carry a value to Studio Frames that goes "above and [well] beyond the paper on which the art cards are printed." J.A. 244. Moreover, as the district court explained, "[t]he materials here, as with the value of a manuscript to its owner or creator, obtain their value through their relationship to the business of the gallery and the history of the gallery that these items represent." J.A. 244-45. Such is the unique value of these materials that Studio Frames asserts they may only be replaced at a prohibitive cost. Finally, the interpretation of the term "valuable papers or records" to include these promotional materials is consistent with the apparent purpose of the provision, to shift to the insured the risk of protecting valuable items that could easily be protected from flood damage. *See* note 7.

In sum, we believe that these materials fit naturally within the items already included on the list of excluded items in Art. 6 § A(1) of the SFIP and, for that reason, are properly characterized as "other valuable papers or records" under the policy. We therefore affirm the district court on this claim.

## CONCLUSION

The judgment of the district court is reversed in part and affirmed in part. The case is remanded with instructions to the district court to determine whether Standard Fire repudiated the policy by refusing to provide building coverage to Studio Frames.

*AFFIRMED IN PART, REVERSED IN PART*