**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1448

COLLINS HOLDING CORPORATION; COLLINS
PROPERTIES, LP,

                                    Plaintiffs - Appellants,

          versus

WAUSAU UNDERWRITERS INSURANCE COMPANY; LMG
PROPERTY,

                                    Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Greenville.  Henry M. Herlong, Jr., District
Judge.  (CA-03-3552-6-HMH)

Argued:  September 20, 2006            Decided:  November 3, 2006

Before MOTZ and GREGORY, Circuit Judges, and Richard L. VOORHEES,
United States District Judge for the Western District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles Elford Carpenter, Jr., RICHARDSON, PLOWDEN,
CARPENTER & ROBINSON, Columbia, South Carolina, for Appellants.
James William Logan, Jr., LOGAN, JOLLY & SMITH, L.L.P., Anderson,
South Carolina, for Appellees.  **ON BRIEF:** Carmen V. Ganjehsani,
RICHARDSON, PLOWDEN, CARPENTER & ROBINSON, Columbia, South
Carolina, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In this diversity contract case, Collins Holding Corporation ("Collins"), a commercial real estate company, sues Wausau Underwriters Insurance Company ("Wausau"), which insured a property owned by Collins that was destroyed by fire. Collins alleges that Wausau anticipatorily breached the insurance policy by imposing a deadline for Collins to rebuild, and then refusing to pay the replacement value of the property when Collins failed to meet the deadline. Further, Collins asserts that Wausau's conduct in the negotiations breached an implied covenant of good faith and fair dealing. After Collins presented its case to a jury, the district court granted Wausau's motion for a judgment as a matter of law on both claims. Collins appeals; we affirm.

I.

Wausau insured several properties owned by Collins against fire damage, including the property at issue here, a building at 3505 Augusta Road in Greenville, South Carolina (the "3505 Property"). On or about August 13, 2000 a fire destroyed the 3505 Property, which the parties concede was covered by Wausau's policy.

The policy gave Collins the option to claim the actual cash value of the damage, or the cost of replacing the damaged property with a building of like size and construction. The dispute here concerns the parties' negotiations over the replacement cost. The

3

relevant portion of the policy states that Wausau "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is <u>actually repaired or replaced</u>; <u>and</u> (2) Unless the repairs or replacement are made <u>as soon as reasonably possible</u> after the loss or damage" (emphasis added).

Collins wanted to rebuild the property. But Collins insisted upon reaching an agreement with Wausau over coverage <u>prior</u> to the rebuilding, instead of seeking the replacement cost after the rebuilding, as provided by the terms of the policy. Collins owned another building that had burned, the "7150 Property," which Wausau also insured under a policy with the same terms, and the parties had agreed about replacement cost prior to rebuilding that property.

Beginning in September 2000, the parties negotiated over the cost of rebuilding the 3505 Property. In a letter dated January 15, 2001, Wausau offered to pay Collins an actual cash value settlement of $296,455.56 <u>or</u> a replacement cost settlement of $409,778.09. Collins did not accept the offer. The parties continued to disagree on the replacement cost. On April 22, 2002, Wausau reiterated its January 15, 2001 offer and informed Collins that it must complete the repairs and make a claim for the replacement cost by February 6, 2003. Noting that "[t]wenty [20] months have passed since the date of loss," Wausau told Collins that missing the February 6, 2003 deadline would lead to a

4

"forfeiture of the replacement cost benefit." On July 18, 2002, Wausau paid Collins the actual cash value of the property -- $295,455.56 -- which Collins accepted. However, Collins continued to negotiate with Wausau as to replacement cost through the February 2003 deadline. On February 18, 2003, Wausau informed Collins that because it had failed to rebuild prior to the February 6 deadline, Wausau would "suspend all further adjustment activity and close our file."

Collins filed suit against Wausau in South Carolina state court; Wausau removed the case to federal court. After Collins presented its evidence to the jury, Wausau moved for a judgment as a matter of law, which the district court granted.

We review the judgment as a matter of law, or directed verdict, de novo. Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). "The standard for granting a directed verdict requires a court to view the evidence in the light most favorable to the non-moving party and draw every legitimate inference in favor of that party; having treated the adjudicatory facts in this fashion, the court must determine whether a reasonable trier of fact could draw only one conclusion from the evidence." Hofherr v. Dart Indus., Inc., 853 F.2d 259, 261-62 (4th Cir. 1988) (internal quotation marks omitted).

II.

Collins first claims that it presented sufficient evidence from which a reasonable jury could have found that Wausau anticipatorily breached the insurance contract, by refusing to pay any replacement cost at any time, regardless of whether Collins replaced the 3505 Property.

A.

Where adopted, the anticipatory breach doctrine excuses the nonbreaching party from contractual conditions precedent. See, e.g., Studio Frames LTD v. Standard Fire Insurance Co., 369 F.3d 376, 381 (4th Cir. 2004) (citing Restatement (Second) of Contracts ("Restatement") § 253(2) & cmt. b; and 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts ("Williston") § 39:38 (4th ed. 2002)). South Carolina law governs this diversity case, and that state long ago adopted the doctrine of anticipatory breach. See Payne v. Melton, 45 S.E. 154 (S.C. 1903); 30 S.C. Jur. Contracts § 66; Keith A. Rowley, A Brief History of Anticipatory Repudiation in American Contract Law, 69 U. Cin. L. Rev. 565, 599 (2001). Thus in this case, proof of Wassau's anticipatory breach would excuse Collins from the contractual condition precedent of rebuilding before being paid the replacement cost.

Although South Carolina has adopted the anticipatory breach doctrine, state law on the subject is sparse. South Carolina,

6

however, has consistently looked to traditional sources in its development of other areas of contracts law. See, e.g., Holler v. Holler, 612 S.E.2d 469, 475-76 (S.C. 2005); White v. J.M. Brown Amusement Co., Inc., 601 S.E.2d 342, 345 (S.C. 2004); Boddie-Noell Props., Inc. v. 42 Magnolia P'ship, 574 S.E.2d 726,729-30 (S.C. 2002); Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 n.7 (S.C. 2001). Accordingly, the common law -- including the case law developed in this circuit, e.g., Studio Frames, 369 F.3d 376; City of Fairfax v. Wash. Met. Area Transit Auth., 582 F.2d 1321 (4th Cir. 1978) -- and standard treatises and authorities, e.g., Restatement § 253; 23 Williston § 63:42, at 609, § 63:45 at 618; 9 Arthur Linton Corbin, Corbin on Contracts ("Corbin") § 973, at 801 (interim ed. 2002); 17B C.J.S. Contracts ("C.J.S.") § 536, at 199, assist us here in determining what proof a South Carolina court would require of a party seeking to establish anticipatory breach.

No single authority presents, as a comprehensive enumerated list, the standards for finding an anticipatory breach. But taken together, the relevant sources offer the following guidelines for defining an anticipatory breach: (1) the repudiation must be unequivocal, Studio Frames, 369 F.3d at 383; Fairfax, 582 F.2d at 1326; 23 Williston § 63:45, at 620; 9 Corbin § 973, at 801-02; 17B C.J.S. § 536, at 199; (2) the repudiation must be a "final and absolute declaration that the contract must be regarded as altogether off," Fairfax, 582 F.2d at 1326-27 (internal quotation

7

marks omitted); 17B C.J.S. § 536, at 199;  (3) the repudiation must be unconditional, <u>Fairfax</u>, 582 F.2d at 1326 (citing <u>Frank F. Pels Co. v. Saxony Spinning Co.</u>,287 F. 282, 288 (4th Cir. 1923)); 17B C.J.S. § 536, at 200; (4) the repudiation cannot rest on a "partial breach" but must "go to the whole consideration of the contract," relate to the "very essence of the contract," and "defeat the object of the parties in making the contract," <u>Fairfax</u>, 582 F.2d at 1328 (internal quotation marks omitted); <u>Studio Frames</u>, 369 F.3d at 383; 9 Corbin § 973, at 805; 17B C.J.S. § 536, at 199; (5) while the repudiation need not be express, if it rests on the defendant's conduct it must evince "a clear intention to refuse performance in the future," <u>Studio Frames</u>, 369 F.3d at 383 (internal quotation marks omitted); <u>Fairfax</u>, 582 F.2d at 1327; 23 Williston 63:46, at 623.  These factors do not set forth a balancing test.  Rather, if a plaintiff fails to establish any one of them, it cannot prevail on its anticipatory breach claim.  With these standards in mind, we turn to the facts of the case at hand.

B.

As evidence of anticipatory breach, Collins relies on Wausau's February 18, 2003 letter.  In that letter Wausau informed Collins: "By not making your replacement cost claim by the previously-established February 6, 2003, deadline, and not meeting other terms and conditions of the policy, we will suspend all further

8

adjustment activity and close our file." This letter fails, however, to establish that Wausau anticipatorily breached the policy.

The policy requires that repairs be made "as soon as reasonably possible after the loss." Although Collins argues that the reasonableness of Wausau's February 6, 2003 deadline is a question of fact best left to a jury, all of Collins's own evidence supports the conclusion that the deadline was reasonable.

The representative of Cely Construction, Collins's witness, testified that the construction would take approximately four to four and a half months. And Collins stipulated at trial that it could afford to rebuild <u>before</u> being reimbursed. Thus, even if the insurance policy did not require Collins to rebuild within a reasonable time of its "loss" in August 2000 -- a question we need not reach -- Wausau's April 2002 notification that Collins must rebuild within the <u>next</u> nine months, by February 6, 2003, provided Collins with more than sufficient time, even according to Collins's own witness. Because the deadline was reasonable, Wausau's February 18, 2003 letter was in keeping with the terms of the contract, not a repudiation of it.

Collins's anticipatory breach claim fails.

III.

Collins also argues that a reasonable jury could have found that Wausau breached an implied covenant of good faith and fair dealing. Collins asserts that Wausau breached this covenant because it negotiated a replacement value with Collins in advance of the rebuild on another property (the 7150 Property), began a similar course of negotiations here, and so knew that Collins expected to reach a similar agreement here, and yet imposed an arbitrary deadline that Collins could not meet.

Collins correctly points out that under South Carolina law, an implied covenant of fair dealing requires a court to look to the course of dealing between the parties. See Commercial Credit Corp. v. Nelson Motors, Inc., 147 S.E.2d 481, 485 (S.C. 1966). But even in light of the course of dealing between the parties over the 7150 Property, the undisputed evidence shows that Wausau has "perform[ed] those things that according to reason and justice [it] should," Boddie-Noell Props., Inc. v. 42 Magnolia P'ship, 544 S.E.2d 279, 284 (S.C. Ct. App. 2000) (internal quotation marks omitted), aff'd, 574 S.E.2d 726 (S.C. 2002), and so has not breached the implied covenant.

Collins's own evidence demonstrates that Wausau notified Collins of the February 6, 2003 deadline on April 22, 2002 -- over nine months in advance of the deadline, and twenty months after the fire. According to Collins's own witness this deadline provided it

10

with more than the four or five months needed to rebuild, an expense Collins conceded it could afford to undertake without the insurance payment. Collins's evidence also demonstrates that Wausau repeatedly and consistently reminded Collins of the February 6 deadline in numerous letters prior to that deadline. A reasonable trier of fact could draw only one conclusion from this evidence: that Wausau did not breach the implied covenant of good faith and fair dealing.

## IV.

For all of these reasons, the judgment of the district court is

<u>AFFIRMED</u>.