**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2009

Charles R. Fulbruge III
Clerk

No. 09-30028

THRACE B. NORMAN; M. LIZABETH TALBOTT

Plaintiff-Appellee-Cross-Appellant

v.

FIDELITY NATIONAL INSURANCE COMPANY

Defendant-Appellant-Cross-Appellee

Appeals from the United States District Court for the
Eastern District of Louisiana
2:07-CV-4438

Before GARWOOD, DAVIS, and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

This appeal and cross-appeal revolve around the question of whether the insured must file a statutorily required proof of loss ("POL") to recover under a Standard Flood Insurance Policy ("SFIP"). We answer this question in the affirmative and for the reasons stated below, we AFFIRM in part, VACATE in part, and RENDER judgment in favor of Fidelity.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Plaintiff-Appellee Thrace Norman ("Norman") is the holder of a National Flood Insurance Plan ("NFIP") SFIP purchased from the defendant, Fidelity National Insurance, Co. ("Fidelity").[1] The policy covered Norman's two-story property in New Orleans. At the time the policy was issued, it was rated as a postfirm policy[2] and specifically stated that there was "no basement" in the property.

Hurricane Katrina struck New Orleans on August 29, 2005 and damaged Norman's property.[3] Norman filed a claim for flood-related damages approximately five days after the storm. On November 1, 2005, a flood adjuster inspected only the exterior of Norman's property. On December 4, 2005, Fidelity sent Norman a check for $10,697.68 to cover the adjusted exterior damage. On February 9, 2007, a different adjuster, Robert Bonka, inspected the interior of Norman's first floor area, accounting for its contents. Bonka determined the adjusted value owed to Norman for the first floor interior and contents to be $2,480.90. On April 3, 2007, Fidelity sent Norman a check for $419.80 to cover the adjusted interior and contents damage.

---

[1] Fidelity is a Write Your Own ("WYO") Program Carrier participating in the U.S. Government's NFIP pursuant to the National Flood Insurance Act of 1968. The WYO program allows participating property and casualty insurance companies to write and service the SFIP in their own names. The companies receive an expense allowance for policies written and claims processed while the Federal Government retains responsibility for underwriting losses. FEMA – Answers to Questions About the NFIP, http://www.fema.gov/business/nfip/intnfip.shtm#6W (last visited Nov. 19, 2009).

[2] Policy rates are determined, in part, by the Flood Insurance Rate Map (FIRM). When a construction is built prior to the publication of a flood rate map, the policy is rated as a prefirm policy. If the construction is built after the publication of a flood map, it is rated as a postfirm policy. Prefirm premiums are lower than postfirm premiums.

[3] Norman's property was a two story "raised shotgun double" home. Norman lived upstairs on the second floor; the first floor had once been an apartment, but at the time of the storm it was being used for storage. According to testimony, the first floor was under two feet of water following Hurricane Katrina. As a result of this flooding, the interior walls, electrical fixtures, and various pieces of Norman's personal property were damaged.

On March 26, 2007, Fidelity retroactively changed Norman's policy rating to a prefirm policy. The reason for the change, according to Fidelity, was that the original postfirm rating was incorrect. The change in firm rating meant that Norman overpaid his premiums, so Fidelity reimbursed him for the amount he overpaid. At the same time, Norman's property description was also retroactively changed from stating "no basement" to stating "basement enclosure unfinished."

On April 27, 2007, Norman filed suit against Fidelity claiming that Fidelity breached its contract with Norman by failing to properly adjust Norman's claim. Specifically, Norman alleged that the $10,697.68 along with the $419.80 paid by Fidelity was only a fraction of the total damage sustained to the property following the hurricane. Prior to filing suit, however, Norman did not submit a POL to Fidelity in accordance with the SFIP. Fidelity argued to the district court that Norman's failure to file a POL relieved Fidelity of any obligation it owed Norman. In response, Norman contended that Fidelity repudiated the policy on March 26, 2007. According to Norman, when the firm rating and basement description were altered, Fidelity repudiated the policy thus relieving Norman from filing a POL.

At trial, Norman elicited expert testimony that the total damage to Norman's property was approximately $68,000. Nevertheless, the district court ruled in favor of Fidelity, holding that, because Norman failed to file a POL, Norman was not entitled to any payment by Fidelity above the amount Fidelity determined he was owed. However, the district court found that Norman was entitled to the full amount Bonka determined Norman was owed for the contents of the first floor area. Accordingly, the court entered judgment in favor of Norman for $2,061.10 representing the difference between the $2,480.90 adjustment Bonka determined was the amount owed to Norman and the $419.80 Fidelity paid to Norman on April 3, 2007.

Norman filed a timely appeal arguing that Fidelity repudiated the policy and therefore no POL had to be filed. Thus, Norman argued, the district court erred in refusing to award him for the total loss of the property. Fidelity also timely appealed, arguing that the district court erred in awarding Norman the additional $2,061.10. We discuss Norman's appeal and Fidelity's appeal separately below.

II.

Norman argues that the district court erred in concluding that he was required to file a POL.

The flood policy at issue in this case was a Dwelling Form SFIP, issued to Norman by Fidelity and codified under 44 C.F.R. § 61, App. A(1). Under 44 C.F.R. § 61.13, the holder of a SFIP must comply with the terms of the SFIP. The SFIP contains a requirement that the insured *must* file a POL within sixty days after the loss has occurred. Article VII(J)(4) 44 C.F.R. Pt. 61 App. A(1). *See Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287 (5th Cir. 2009) (distinguishing between the proof of loss clause of the SFIP that uses the word "must" and the appraisal clause of the SFIP that uses the word "may" and finding the former is mandatory but the latter is optional). The Fifth Circuit has consistently held that when the insured fails to file a POL, the insurer is relieved of its obligation to pay an otherwise valid claim. *Marseilles Homeowners Condo Ass'n v. Fid. Nat'l Ins. Co.*, 542 F.3d 1053, 1055–56 (5th Cir. 2008); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005); *Gowland v. Aetna*, 143 F.3d 953, 954 (5th Cir. 1998).

There are some exceptions to the requirement that a POL be filed. Sec. 61.13(d) states that the Federal Insurance Administrator may provide express written consent to alter, vary, or waive the SFIP. Thus, in case of an express alteration, variation, or waiver, a POL need not be filed. Additionally, the

Fourth Circuit has held that filing a POL is unnecessary if the insurer repudiates the policy before the insured was obligated to file a proof of loss. *Studio Frames v. Std. Fire Ins. Co.*, 369 F.3d 376 (4th Cir. 2004).

Since Norman filed no POL, the question before this court narrows to whether Norman established an applicable exception to the requirement that a POL be filed. In this case, no exception to the POL filing requirement was established. It is undisputed that there was no alteration, variation, or waiver of the SFIP. Therefore, § 61.13(d) does not apply.

Despite Norman's assertion that Fidelity repudiated the contract, we agree with the district court that repudiation did not take place. Under the Fourth Circuit's analysis in *Studio Frames* that Norman asks this court to apply, the court provided the following guidance in determining whether the insurer repudiated a contract:

> First, in determining whether [the defendant-insurer] repudiated a term of the contract, the district court should bear in mind that a refused performance "need not be express or dependent on 'spoken words' alone; it may rest on a defendant's conduct evidencing a clear intention 'to refuse performance in the future.'" Second, for there to be repudiation of a contract, the district court must conclude that the contract was binding on the party refusing to perform, i.e., that [the defendant-insurer] was mistaken in its belief that the SFIP forbade it from offering building coverage to [the plaintiff-insured]. A party to a contract does not repudiate its obligations under that contract by refusing to do that which the contract forbids it from doing. And third, if it is determined that [the defendant-insurer] was bound to provide building coverage under the contract, it must be determined whether its refusal to perform that obligation was unequivocal and went to the "very essence of the contract."

*Id.* at 383 (citations omitted).

For the *Studio Frames* repudiation exception to apply, the insured must demonstrate that the insurer owes the insured coverage that it refused to

provide. *Id.* In this case, Fidelity did not deny Norman coverage. On the contrary, Fidelity admitted in open court that Norman had coverage. The dispute between Fidelity and Norman revolves around the amount of loss, not the coverage itself. As such, Fidelity did not repudiate the contract. Because there was no repudiation, Norman was required to file a POL. Norman did not timely file a POL; therefore Fidelity is relieved of any obligation to pay Norman.

## III.

Fidelity appeals the district court's order awarding Norman the difference between the amount Fidelity's adjuster stated Norman was owed and the sum Fidelity actually paid Norman. We agree with Fidelity that the district court erred in awarding Norman the additional $2,061.10.

The NFIP is a federally-administered program supported by funds drawn from the federal treasury. *Gowland v. Aetna*, 143 F.3d 951. 955 (5th Cir. 1998). Payments made pursuant to a policy underwritten by the NFIP are a direct charge on the public treasury. *Id.* Under the Appropriations Clause of the Constitution, "money may be paid out only through an appropriation by law; in other words, the payment of money from the Treasury must be authorized by statute." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005). 44 C.F.R. § 61.1, *et seq.*, which establishes the terms of the SFIP, requires the filing of a POL before the insured can receive payment on his claim. Applying the analysis in *Wright* to this case, a court may not order payment of funds from the NFIP when the requirements of the statute have not been met. Because Norman failed to file a POL, the district court erred in awarding Norman the additional $2,061.10.

CONCLUSION

For the above reasons, we AFFIRM the district court's rejection of Norman's $68,000.00 claim against Fidelity for flood damage to his home; however we VACATE the district court's award of $2,061.10 representing the difference between the amount Fidelity paid and the amount the adjuster offered for contents damage; we therefore RENDER a take nothing judgment in favor of Fidelity.