# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 97-30397

---

CHARLES L. GOWLAND; MARGUERITE C. GOWLAND,

Plaintiffs-Appellants,

versus

AETNA; AETNA FLOOD INSURANCE PROGRAM;
AETNA CASUALTY & SURETY CO.,

Defendants,

AETNA CASUALTY & SURETY CO.,

Defendant-Appellee.

---

Appeal from the United States District Court
For the Western District of Louisiana

June 25, 1998

Before POLITZ, Chief Judge, HIGGINBOTHAM and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Charles and Marguerite Gowland seek to recover benefits under a Standard Flood Insurance Policy issued by Aetna Casualty & Surety Co., under the provisions of the National Flood Insurance Act.[1] The district court granted Aetna's

---

[1] 42 U.S.C. §§ 4001-4128.

motion for summary judgment on the basis that the Gowlands failed to file the requisite sworn proof of loss. Concluding that the Gowlands have failed to conform with mandatory policy provisions, we affirm.

## BACKGROUND

On April 27, 1994 the Gowlands' camp, located on the Banks of Bayou Mellom in St. Mary Parish, was flooded. The flood waters from the bayou entered the property, rose to a level of approximately three inches above the floor and did not begin to recede until three or four weeks later. At the time of the flooding, the property was insured by a flood insurance policy issued by Aetna. The policy required that the insured submit to Aetna, within 60 days after the loss, a sworn proof of loss statement detailing, *inter alia*, the items damaged and the dollar amounts claimed.

The day after the flood the Gowlands reported the damage to their local agent who, in turn, notified Aetna. The loss was reported on a form provided by Aetna and contained some of the same information that would have been provided in a proof of loss statement. Aetna sent an adjuster to the property who found water standing inside the structure and determined that he was not qualified to inspect for possible foundation damage. Thereafter, Aetna hired an engineer who inspected the property on May 18, 1994 and determined that there had been no recent earth

2

movement caused by the flooding. On June 14, 1994 Aetna asked the Gowlands to provide the requisite "proof of loss" which it described as "your statement to us listing the dollar amount of your claim" or to provide an explanation why such a statement could not be furnished. In order to comply with the policy's requirements, the Gowlands needed to submit their proof of loss statement by June 27, 1994. Instead of submitting the proof of loss, the Gowlands' agent advised Aetna that the amount of the loss had yet to be determined because it was not possible to ascertain the extent of the damage until the water receded from the structure.

Meanwhile, Aetna's adjuster received the engineer's report and advised the Gowlands that there were no damages found and that their claim was being closed. In March of 1995 the Gowlands claimed that the damages from the flood began to be manifested and, through their agent, they made a written request to Aetna to reopen the file. Aetna agreed and suggested that the Gowlands hire their own engineer to inspect the property. After the Gowlands' engineer submitted his findings, Aetna once again denied the claim and advised that the file would be closed. In August of 1995 Aetna agreed to, once again, reopen the file to consider cost estimates secured by the Gowlands. After receiving this filing, Aetna advised that the estimates were totally unacceptable. The Gowlands offered to engage a

contractor to help arrive at a mutually agreeable cost estimate but received no reply from Aetna. Thereafter, the Gowlands sued Aetna in state court. Aetna removed the case to federal court and moved for summary judgment, seeking dismissal of the claim based on the fact that the Gowlands had failed to file a sworn proof of loss as required by the policy. Aetna's motion was granted and the Gowlands timely appealed.

## ANALYSIS

Although the Gowlands acknowledge that they never filed a formal proof of loss statement as required by the insurance policy, they contend that they substantially complied with the proof of loss requirement when their adjuster filed a notice of loss the day after the alleged damage occurred. In addition, they maintain that Aetna waived the proof of loss requirement by repeatedly re-opening their claim and by never mentioning the absence of the proof of loss statement as a reason for denying coverage. Finally, they contend that the doctrine of equitable estoppel bars Aetna from asserting the proof of loss requirement as a defense.

### A. *The National Flood Insurance Program*

Before addressing the merits of the Gowlands' claims, we must focus on the essential fact that this claim involves the National Flood Insurance Program. It is uneconomical for private insurance companies to provide flood insurance with

4

reasonable terms and conditions to those in flood prone areas. Therefore, in 1968 Congress established the National Flood Insurance Program to provide insurance coverage at or below actuarial rates. The program is currently operated by the Federal Emergency Management Agency (FEMA) and actually is supported by the federal treasury.

Flood insurance policies can be issued directly by FEMA or through private insurers known as "Write Your Own" companies. By statute, these companies are fiscal agents of the United States.[2]

The terms and conditions of all federal flood insurance policies, including the policy issued to the Gowlands, are fixed by FEMA. Policies must be issued in the form of a Standard Flood Insurance Policy and no provision of the policy can be altered, varied, or waived without the express written consent of the Federal Insurance Administrator.[3]

## *B. Substantial Compliance*

The Gowlands contend that the notice of loss provided to Aetna contained substantially the same information as required by the formal proof of loss form and should be deemed sufficient. The flood policy issued to the Gowlands'

---

[2]42 U.S.C. § 4071.

[3]44 C.F.R. §§ 61.4(b), 61.13(d).

provided in pertinent part:

Should a flood loss occur to your insured property, you must:

1. Notify us in writing as soon as practicable;
2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it; and
3. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:
   a. The date and time of the loss;
   b. A brief explanation of how the loss happened;
   c. Your interest in the property damaged (for example, "owner"), the interest, if any, of others in the damaged property;
   d. The actual cash value of each damaged item of insured property . . . and the amount of damage sustained;
   e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property;
   f. Details as to any other contracts of insurance covering the property, whether valid or not,
   g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued;

h.      Details as to who occupied any insured building at the time of the loss and for what purpose; and

i.      The amount you claim is due under this policy to cover the loss, including stats concerning: (1) The limits of coverage stated in the policy; and (2) The cost to repair or replace the damaged property (whichever is less).

Although the notice of loss provided by the Gowlands gave some of the information required by the formal proof of loss statement, it is clear that giving notice of loss and providing a sworn proof of loss statement are separate and distinct requirements of the policy.  The policy calls for written notice of loss to be given as soon as practicable <u>and</u> a formal proof of loss statement to be submitted within 60 days after the loss.  The Gowlands provided written notice of loss through their agent, but never filed a formal proof of loss statement as required by the policy.  As the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced,[4] we hold that an insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise

_____

[4]**Federal Crop. Ins. Corp. v. Merril**, 332 U.S. 380 (1947).

7

might be a valid claim.

## *C. Waiver*

The Gowlands contend that Aetna waived the proof of loss requirement by failing to mention it as a basis for denying their claim, and by repeatedly re-opening their file after the sixty-day deadline. The policy at issue herein provides that the insurer, at its option, may waive the proof of loss requirement in certain cases. In such cases, the insured is required to sign, and at the insurer's option, swear to the adjuster's report of the loss. As the district court noted, the Gowlands never signed an adjuster's report of loss.

The Gowlands further contend that Aetna's reminder letter regarding the proof of loss statement waived the proof of loss requirement by failing to specify accurately the information prescribed in the policy. As noted above, the federal regulations provide that no provision of the policy may be altered, varied, or waived without the <u>express</u> written consent of the Federal Insurance Administrator.[5] It is clear that no such waiver was sought or obtained herein.

The reminder letter sent by Aetna expressly stated that it was not waiving any rights or defenses under the policy. It is therefore beyond peradventure that Aetna's letter may not be interpreted as an express written waiver. In light of the

---

[5] 44 C.F.R. § 61.13 (d).

provision that an express written waiver is necessary to dispense with the proof of loss requirement, the Gowlands' contention that Aetna waived that requirement by merely re-opening the file after the sixty-day deadline is devoid of merit. At most, the re-opening of the file after the deadline might be deemed a constructive waiver which, however, could not be effective in light of the policy and federal regulations mandating that any waiver be express and in writing.

### D. *Equitable Estoppel*

Finally, the Gowlands contend that the doctrine of equitable estoppel bars Aetna from asserting the proof of loss requirement as a defense. Their contention is based on the premise that Aetna was aware that their camp had been damaged by the flood and took steps which led them to believe that their claim was being routinely processed.

The Gowlands notified Aetna the day after the flood. Thereafter, adjusters were sent to inspect the property and Aetna and the Gowlands continually negotiated the insurance claim. While we may empathize with the Gowlands' position, they have not advanced a valid claim for traditional estoppel,[6] and

---

[6]The elements of estoppel are that (1) the party to be estopped was aware of the facts; (2) the party to be estopped intended its act or omission to be acted upon; (3) the party asserting estoppel did not have knowledge of the facts; and (4) the party asserting estoppel reasonably relied on the conduct of the party to be estopped to his substantial injury. **Ingalls Shipping, Inc. v. Director, Office of Workers' Compensation**

9

decidedly have not advanced a valid claim, should such exist, for estoppel against the government.

Although the Gowlands' policy was written by Aetna, a private insurance company, payments made pursuant to that policy are "a direct charge on the public treasury."[7] When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury."[8] To date, the Supreme Court has not upheld an estoppel claim resulting in the payment of money out of the treasury.

*Conclusion*

We find that the theories of substantial compliance, waiver, and equitable estoppel are inapplicable to the facts presented herein. While this result may seem

---

**Programs, U.S. Dept. of Labor**, 976 F.2d 934 (5th Cir. 1992). As the district court noted, the Gowlands cannot satisfy the third element of the test. Not only did Aetna remind them of their obligation to file a proof of loss statement, the record indicates that the Gowlands had filed flood claims and satisfied the proof of loss requirement in the past.

[7]**In re Estate of Lee**, 812 F.2d 253, 256 (5th Cir. 1987).

[8]**Office of Personnel Management v. Richmond**, 496 U.S. 414, 425 (1990).

harsh in light of the Gowlands' ongoing negotiations with Aetna, we must remind that the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace. Requiring the Gowlands to turn square corners when dealing with the Treasury "does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury."[9] Accordingly, the judgment of the district court must be and is AFFIRMED.

---

[9]**Federal Crop Ins. Corp. v. Merrill**, 332 U.S. 380, 385 (1947).