11-0220-cv
Jacobson v. Met. Prop. & Cas. Ins. Co.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: November 30, 2011    Decided: March 6, 2012)

Docket No. 11-0220-cv

ROBERT JACOBSON,

*Plaintiff-Appellant*,

— v. —

METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY,
*Defendant-Appellee*.

B e f o r e:

JACOBS, *Chief Judge,* HALL and LYNCH, *Circuit Judges*.

Plaintiff-appellant challenges defendant-appellee's denial of coverage under the

terms of an insurance policy provided under the National Flood Insurance Program, a

program created by Congress that subsidizes flood insurance for individuals and

businesses in areas of high flood risk.  Plaintiff argues that defendant's denial of coverage

excused compliance with the terms of the policy.  Because we must strictly interpret the

terms of governmental insurance policies backed by federal funds, and because the policy

requires compliance with a proof of loss requirement that plaintiff admits he did not follow, we affirm the district court's grant of summary judgment to defendant.

––––––––––––––

THOMAS R. FALLATI, Tabner, Ryan & Keniry, LLP, Albany, NY, *for Plaintiff-Appellant*.

GERALD J. NIELSEN, Nielsen Law Firm, LLC, Metairie, LA (Iseman, Cunningham, Riester & Hyde, LLP, Albany, NY, *on the brief*), *for Defendant-Appellee*.

––––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant Robert Jacobson appeals an order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *J.*) granting summary judgment for defendant Metropolitan Property & Casualty Insurance Company ("Metropolitan"). Jacobson argues that the district court erred in holding that Jacobson's non-compliance with the terms of the Standard Flood Insurance Policy ("SFIP") administered by Metropolitan on behalf of the Federal Emergency Management Agency ("FEMA") pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4127 ("NFIA"), precludes his recovery on the policy. Finding no merit to Jacobson's arguments, we affirm.

2

## BACKGROUND

### I. Facts

In 2001, Jacobson purchased a house near the juncture of the Catskill and Kaaterskill Creeks. Jacobson built an addition to the house a year later, extending the structure to the edge of the sloping embankment overlooking the Catskill Creek, to increase its "visual contact with the creek."

Between 2004 and 2006, Jacobson experienced the effects of the Catskill Creek's seasonal flooding nine times, including a June 2006 flood of "historic" proportions. These floods destroyed stairs Jacobson had constructed to lead into the creek and washed away approximately fifty to sixty-five feet of his land. Thereafter, in 2007, Jacobson took out an SFIP from Metropolitan, in its capacity as a Write-Your-Own ("WYO") Program carrier under the NFIA. Like all federally subsidized flood insurance policies purchased through the National Flood Insurance Program ("NFIP"), the terms of Jacobson's SFIP are governed by regulations issued by FEMA. See 44 C.F.R. pt. 61.

Two claim requirements and two exclusions contained in the SFIP are relevant to this case. First, the policy requires that "[i]n case of a flood loss to insured property, [the insured] must . . . [g]ive prompt written notice to [the insurance company]." 44 C.F.R. pt. 61, app. A(l), art. VII(J)(1). Second, the policy requires as follows:

> Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the
>
>
> policy signed and sworn to by you, and which furnishes us

3

with the following information:
. . .
f. Specifications of damaged holdings and detailed repair
estimates.

Id. art. VII(J)(4).

The SFIP also specifically excludes two types of claims. First, the SFIP "do[es] not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date the policy term begins or [c]overage is added at your request." Id. art. V(B) (internal numbering and punctuation omitted). Second, the policy "do[es] not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement . . . not cover[ed] are: earthquake, landslide, land subsidence, sinkholes, destabilization or movement of land that results from accumulation of water in subsurface land area, or gradual erosion." Id. art. V(C) (internal numbering and capitalization omitted).

On or around June 4, 2007, the creeks flooded again, this time rising over forty-six feet and washing away another fifty feet of Jacobson's land. Even at that high level, the water never entered Jacobson's home, and he did not report any incident to Metropolitan. He noticed no damage to the house until December 2007, after an extended vacation, finally making his claim to Metropolitan on January 22, 2008.

Metropolitan proceeded to investigate the claim. On February 4, 2008, Metropolitan notified Jacobson that the terms of the SFIP required that Jacobson provide the proof of loss. Metropolitan further notified Jacobson that a claim filed without a proof of loss would potentially "be closed without payment" consistent with the terms of

4

the policy. Jacobson partially complied, but failed to designate a specific amount of damages, instead listing the value of the loss as "undetermined." On February 13, 2008, Metropolitan sent Jacobson a letter rejecting the claim on the basis of the incomplete proof of loss. Metropolitan's letter also noted that Jacobson could appeal the decision to FEMA.

Jacobson did appeal, but FEMA rejected his appeal on October 3, 2008. The agency based its decision not on the incomplete proof of loss, but on three separate grounds, each a basis for exclusion under the terms of the policy: (1) that Jacobson had failed to notify Metropolitan promptly after the alleged damage occurred; (2) that the actual damage to the home was a consequence of the nine floods that had preceded the June 2007 flood; and (3) that the engineers hired by both parties concurred that "land subsidence [was] the proximate cause of damage to the insured building." FEMA concluded that, because the policy specifically required prompt notification after the covered event, see 44 C.F.R. pt. 61, app. A(1), art. VII.J(1); precluded coverage for "loss directly or indirectly caused by a flood that is already in progress" at the time of covered event, id. pt. 61, app. A(1), art. V(B); and specifically excluded "land subsidence" "even if [the subsidence] is caused by flood," id. art. V(C), Jacobson could receive no coverage under the SFIP.

## II. District Court Proceedings

5

Jacobson sued Metropolitan in district court,[*] arguing, inter alia, that Metropolitan's initial denial of coverage on the basis of Jacobson's incomplete proof of loss amounted to a "repudiation" under New York law, and that such repudiation relieved Jacobson of the proof-of-loss requirements with which he admittedly failed to comply. The district court allowed discovery, after which Metropolitan moved for summary judgment. The district court granted that motion, rejecting Jacobson's arguments. In doing so, the district court noted that "every circuit to address the requirements of recovery under an SFIP has held that an insured's claim cannot be paid unless he has timely submitted a complete proof of loss which is signed and sworn to." Jacobson v. Met. Prop. & Cas. Ins. Co., No. 1:09-CV-0158, 2010 WL 5391530, at *3 (N.D.N.Y. Dec. 21, 2010). The district court also rejected Jacobson's "repudiation" argument, concluding that, even if repudiation could excuse compliance with a policy requirement in the NFIP context, Metropolitan cannot be deemed to have repudiated the policy in this case. Id. at *4-5. This appeal followed.

## DISCUSSION

We review a grant of summary judgment de novo. McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact" and that

---

[*]Although FEMA has the statutory authority to review Metropolitan's determinations on individual policies, it is not a proper party for suit in the event that a party, as here, challenges the insurance company's initial decision. See 44 C.F.R. § 62.23(g).

6

the movant is therefore "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"[A]ll disputes arising from the handling of any claim under [a NFIP] policy are governed

exclusively by the flood insurance regulations issued by FEMA, the National Flood

Insurance Act of 1968, as amended, and Federal common law."  44 C.F.R. pt. 61, app.

A(1), art. IX (internal citations omitted).

On appeal, Jacobson again argues that Metropolitan's rejection of his claim

because of his incomplete filing of a proof of loss excuses his need to file a proof of loss

in the first place.  His argument is unavailing.

## I.  The National Flood Insurance Program

The NFIA recognizes that "many factors have made it uneconomic for the private

insurance industry alone to make flood insurance available to those in need of such

protection on reasonable terms and conditions."  42 U.S.C. § 4001(b).  Under the Act,

"the federal government provides flood insurance subsidies and local officials are

required to adopt and enforce various management measures."  Palmieri v. Allstate Ins.

Co., 445 F.3d 179, 183 (2d Cir. 2006); see also 42 U.S.C. §§ 4002(b)(3), 4012(c), 4022;

44 C.F.R. §§ 60.2-60.7.  The NFIP, created by the Act, is administered by FEMA and

supported by taxpayer funds, which pay for claims that exceed the premiums collected

from the insured parties.  See Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165

n.2 (3d Cir. 1998).  Congress has authorized FEMA to "prescribe regulations establishing

the general method or methods by which proved and approved claims for losses may be

adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019. This regulatory scheme, including the terms and exact language of the SFIP, is recorded in the Code of Federal Regulations. See 44 C.F.R. §§ 61.1-78.14.

Pursuant to its authority under 42 U.S.C. § 4081(a), FEMA created the WYO Program, which allows private insurers, also known as "WYO companies," to issue and administer flood-risk policies under the NFIP. Although FEMA may also issue policies directly, see, e.g., Phelps v. FEMA, 785 F.2d 13, 14 (1st Cir. 1986), "more than 90% are written by WYO companies." C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 (3d Cir. 2004). WYO companies such as Metropolitan may act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), but they are not general agents and therefore must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent. See 44 C.F.R. §§ 61.4(b), 61.13(d)-(e), 62.23(c)-(d). Thus, while the private insurance companies administer the federal program, "[i]t is the Government, not the companies, that pays the claims." Palmieri, 445 F.3d at 184; see also Downey v. State Farm Fire & Cas. Co., 266 F.3d 675, 679 (7th Cir. 2001) (noting that under the NFIP, "although private insurers issue the policies, FEMA underwrites the risk" and that the "insurance companies handle administrative business for FEMA by selling policies and processing claims but do little else").

Jacobson's argument rests on the idea that the SFIP at issue here must be

8

interpreted like any private insurance contract, thus allowing him the benefit of a more liberal interpretation of the proof-of-loss requirement with which he failed to comply. While we have not specifically addressed the interpretation of SFIP proof-of-loss requirements, many of our sister circuits have done so and have uniformly held that those requirements must be strictly construed and enforced. See, e.g., Evanoff v. Standard Fire Ins. Co., 534 F.3d 516 (6th Cir. 2008); Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337 (11th Cir. 2007); Phelps, 785 F.2d 13; Suopys v. Omaha Prop. & Cas., 404 F.3d 805 (3d Cir. 2005); Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003); Mancini v. Redland Ins. Co., 248 F.3d 729 (8th Cir. 2001); Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386 (9th Cir. 2000); Gowland v. Aetna, 143 F.3d 951 (5th Cir. 1998).

We adopt the same standard here. We do so in part because "[t]here is a compelling interest in assuring uniformity of decision in cases involving the NFIP." Flick, 205 F.3d at 390. But even if we were the first to address the issue, we would reach the same conclusion. In a private insurance context, policy exclusions and limitations "are to be accorded a strict and narrow construction." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 311 (1984). Ordinarily, such a construction is to the benefit of the insured: strict construction makes the terms of the policy easier to understand and easier to satisfy. In some contexts, the result following such a construction may offend equitable principles. When that occurs, a court may be justified in invoking other principles on behalf of an innocent insured in order to accomplish the design of an

9

insurance policy. See, e.g., Lane v. Sec. Mut. Ins. Co., 96 N.Y.2d 1, 4-6 (2001).

But when private parties make demands on the public fisc, different principles are at stake. "Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." Wright v. Allstate Ins. Co., 415 F.3d 384, 388 (5th Cir. 2005). "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law . . . . [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." Heckler v. Cmty. Health Servs. of Crawford Cnty, Inc., 467 U.S. 51, 63 (1984). In the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such policies. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947).

The principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create ostensibly inequitable results. In Gowland, for example, the insureds suffered a flood that "rose to a level of approximately three inches above the floor and did not begin to recede until three or four weeks later." 143 F.3d at 952. The WYO insurance company's agent concurred that there was covered damage, but insisted that the policy still required a proof of loss. The Gowlands' agent represented to the insurance company that the proof of loss was not possible to calculate, because the water had not yet receded, but never filed a formal

10

proof-of-loss statement.  Id. at 952-53.  This failure led the Fifth Circuit to decide the case

against the Gowlands, concluding that

> [w]hile this result may seem harsh . . . , we must remind that
> the National Flood Insurance Program is federally subsidized
> and enables consumers to obtain flood insurance which
> virtually would be impossible to purchase in the marketplace.
> Requiring the Gowlands to turn square corners when dealing
> with the Treasury "does not reflect a callous outlook.  It
> merely expresses the duty of all courts to observe the
> conditions defined by Congress for charging the public
> treasury."

Id. at 955, quoting Fed. Crop Ins. Corp., 332 U.S. at 385.

Fortunately, our decision here does not produce an inequitable result of this kind.

Jacobson's claim is not similar to that of the plaintiffs in Gowland.  Although

Metropolitan's February 13, 2008, letter rejected Jacobson's claim on the basis of its

incomplete proof-of-loss statement, FEMA rejected the claim because Jacobson sought

coverage for damage specifically excluded by the policy.  Thus, even assuming arguendo

that the regulatory scheme established by the NFIA allowed for it, Jacobson's claim

would not benefit from a more liberal construction of the policy's terms and

requirements.

## II.  Repudiation

Jacobson nevertheless argues that, as a matter of both federal and New York law,

he was excused from complying with his responsibilities under the policy in light of

Metropolitan's rejection of his claim.  To make this argument, Jacobson interprets

11

Metropolitan's February 13, 2008, rejection as constituting a wholesale "repudiation" of the contract, thereby excusing Jacobson's compliance with the proof-of-loss requirements.

In New York, in the context of private insurance, a defendant insurance company can sometimes waive the filing of a proof of loss (or become estopped from enforcing a proof-of-loss requirement) by repudiating a policy. See Sherri v. Nat'l Sur. Co. of N. Y., 243 N.Y. 266, 272-73 (1926); see also Matter of State Farm Ins. Co. v. Domotor, 266 A.D.2d 219, 220 (2d Dep't 1999) ("An insurance carrier may not insist upon adherence to the terms of its policy after it has repudiated liability on the claim by sending a letter disclaiming coverage . . . ." (citations omitted)).

Jacobson's attempt to classify Metropolitan's rejection as repudiation supposes that the doctrine of repudiation as Jacobson has defined it applies in the context of NFIP policies. That supposition is dubious. At its heart, the doctrine of repudiation rests on notions of waiver and estoppel: the rationale of the doctrine is that an insurer may not rely on the terms of a policy whose binding effect it has disclaimed, and an insured should not be held to strict compliance with claim rules where the insurer has announced that it will not pay any claim under the policy regardless of the insured's compliance. Domotor, 266 A.D.2d at 220. It is well established, however, that the actions of an insurance company under the NFIP cannot waive requirements set by the government, or operate as an estoppel against the government. See Gowland, 143 F.3d at 955; Wright, 415 F.3d at

12

387.  The Supreme Court has made clear that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 426 (1990).  It is thus at best questionable whether the doctrine of repudiation has any application in the context of policies issued under the NFIP.

Nonetheless, the Fourth Circuit, in Studio Frames, Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 380-83 (4th Cir. 2004), has suggested that the repudiation doctrine may apply even in NFIP cases, and Jacobson urges us to construe Studio Frames as controlling this case in his favor.  We decline the invitation.  Studio Frames dealt with an alleged case of policy repudiation, rather than claim rejection, as is the case here.  In Studio Frames, the insured was an art gallery that leased space in a shopping center.  Id. at 378.  After a flood destroyed some of the insured's property, and after the insured made a claim to its WYO insurance company, the company informed the insured that "under the Standard Flood Insurance Policy an insured/tenant cannot purchase building coverage on a building he does not own."  Id. (alterations omitted).  The company then attempted to return the premiums paid by the insured over the life of the policy, regarding its acceptance of the premiums as error in light of the insured's inability to take out the insurance.  Even on these facts, the Studio Frames court did not deem the proof-of-loss requirement waived, but concluded instead "that the policy at issue here *may be* repudiated."  Id. at 383 (emphasis added).  The court thus remanded to the district court to

determine "whether Standard Fire's statements and actions regarding the SFIP building coverage *actually did* amount to repudiation." Id. (emphasis added).

In this case, we need not definitively decide whether repudiation can excuse noncompliance with claims requirements in the NFIP context, because as a matter of law Metropolitan did not repudiate the policy. Repudiating an insurance policy is not the same as denying that the claim presented is covered by the terms of that policy. As Justice Cardozo expressed the distinction:

> Repudiation there was none as the term is known to the law. Petitioner did not disclaim the intention or the duty to shape its conduct in accordance with the provisions of the contract. Far from repudiating those provisions, it appealed to their authority and endeavored to apply them . . . . There is nothing to show that the insurer was not acting in good faith in giving notice of its contention that the disability was over . . . . If it made a mistake, there was a breach of a provision of the policy with liability for any damages appropriate thereto.

N.Y. Life Ins. Co. v. Viglas, 297 U.S. 672, 676 (1936).

Here, Metropolitan did not disavow the policy, nor contend that it was not bound by its terms, and did not attempt, as the insurer did in Studio Frames, to return premiums paid under the policy. Rather, it acknowledged the validity of the policy, investigated the claim, and rested its rejection of Jacobson's claim squarely on its interpretation of provisions of the policy, which unquestionably included the requirement that the insured file a proof of loss. In Justice Cardozo's words, rather than repudiating the provisions of the policy, "it appealed to their authority and endeavored to apply them." Id.

14

Jacobson's contrary characterization makes little sense. Even though the policy did not require Metropolitan to affirmatively remind Jacobson of his responsibility to submit a proof of loss, the company did so. When Jacobson failed to fully comply, the claim was rejected for this failure. It is that rejection, after a warning, that Jacobson views as excusing him from compliance with the requirement. Jacobson's logic is circular. If his version of repudiation were to carry the day, there would be no circumstance under which a party would be required to file a proof of loss. Under Jacobson's proposed approach, a WYO company that rejects a claim for failure to comply with the requirement could be deemed to have repudiated the policy, retroactively excusing the claimant's need for compliance with the proof-of-loss requirement. We reject such an illogical rule. On the facts of this case, we conclude that Metropolitan denied liability, but did not disclaim the validity of the contract. Accordingly, the district court correctly granted summary judgment upholding Metropolitan's rejection of the claim.

## CONCLUSION

We have reviewed Jacobson's remaining arguments and find them to be without merit. For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Metropolitan and its dismissal of Jacobson's complaint.

15