# United States Court of Appeals
## For the First Circuit

No. 13-1176

WAYNE DECOSTA,

Plaintiff-Appellee,

v.

ALLSTATE INSURANCE COMPANY,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, <u>U.S. District Judge</u>]

Before

Lynch, <u>Chief Judge</u>,
Torruella, <u>Circuit Judge</u>,
and Stearns,[*] <u>District Judge</u>.

Gerald J. Nielsen, with whom Joseph J. Aguda, Jr., Nielsen, Carter & Treas, LLC, David W. Zizik, and Zizik, Powers, O'Connell, Spaulding, & Lamontagne, PC were on brief, for appellant.
    Patrick F. Dowling, Jr., with whom D'Amico Burchfield, LLP was on brief, for appellee.

September 20, 2013

---

[*]Of the District of Massachusetts, sitting by designation.

**LYNCH, <u>Chief Judge</u>.** This appeal concerns the special requirements that policyholders, by federal law, must follow to recover their covered losses under flood insurance policies issued as part of the government's National Flood Insurance Program (NFIP). <u>See</u> <u>McGair</u> v. <u>Am. Bankers Ins. Co. of Fl.</u>, 693 F.3d 94, 100-01 (1st Cir. 2012).

Plaintiff Wayne DeCosta's property in Warwick, Rhode Island is insured by a Standard Flood Insurance Policy (SFIP) issued by Allstate Insurance Company (Allstate), a private insurer participating in the NFIP. Allstate issued DeCosta's SFIP on behalf of the Federal Emergency Management Agency (FEMA), the agency that administers the NFIP. DeCosta's insured property was damaged by a flood, Allstate promptly paid him for some claims, and he successfully sued Allstate for what he said were the remaining unpaid covered losses. Allstate appeals from the final judgment in favor of DeCosta.

On appeal, Allstate argues that the court erred because DeCosta's failure to comply with the SFIP's requirement that he timely file a proof of loss as to all of the damages sought bars recovery under his policy for those damages and requires dismissal. Allstate argues, in addition, that the court erred when it invoked the SFIP's appraisal clause to resolve disputes not suited for appraisal.

-2-

We agree that DeCosta cannot recover under the SFIP because of his failure to comply with its proof-of-loss requirements as to the sums sued on. We reverse and direct the district court to enter summary judgment in Allstate's favor.

I.

A.  Background

The parties agree on the following facts. A flood damaged DeCosta's property on or about March 31, 2010, with sixteen to eighteen inches of water accumulated on the main floor of his house. His policy covers flood damage to the building, as well as damaged personal property.

DeCosta notified Allstate of the flood damage, and Allstate hired an independent adjuster, Kim Stevens, to assess DeCosta's damages and process his claim. DeCosta also hired an adjuster to represent him in filing his claim for loss. Stevens visited DeCosta's property twice in April to assess the flood damages. After completing a report about DeCosta's loss, Stevens forwarded two proof-of-loss forms to DeCosta on or about May 8, 2010, which listed the costs that Stevens found to be covered.

A "proof of loss" is an insured's "official claim of damages," which states, inter alia, the amount of money that an insured is claiming under his flood insurance policy, accompanied by detailed information about the property and damages. Nat'l Flood Ins. Program, Flood Insurance Claims Handbook 6 (Feb. 2009),

-3-

available at http://www.fema.gov/media-library-data/20130726-1540-20490-5312/f687_claimshandbook_feb09.pdf [hereinafter NFIP Handbook]; see 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4). A copy of a model form is available online. Importantly, the SFIP requires the proof of loss to be signed and sworn by policyholders and filed within sixty days of the flood loss. 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4).

As a matter of federal law, it is the policyholder's responsibility to submit timely proofs of loss regardless of whether his insurer's adjuster provides him with a form. Id. While it is common for insurance adjusters to send policyholders proof-of-loss forms, as Stevens did, the policy explicitly warns policyholders that such adjusters furnish those forms as "a matter of courtesy only." Id. art. VII(J)(7); NFIP Handbook at 6.

The first proof-of-loss form that Stevens sent DeCosta, and which DeCosta executed and filed, was for building damages of $95,119.05. The second was for recoverable depreciation of $7,539.98. On or about May 29, 2010, Allstate received those two executed proofs of loss with the term "Undisputed" handwritten on each by DeCosta.

In addition to submitting the two executed proofs of loss that were prepared by Allstate, DeCosta also included a separate sixteen-page document from one of his adjusters, Richard Juchnik. That document estimated that DeCosta's building damages were

-4-

$212,071.32, which is about double the amount of damages included in the executed proofs of loss. That document was not from DeCosta, nor was it sworn or signed by him.

Within days, by May 31, 2010, Allstate had paid DeCosta $102,659.03. That amount is the total amount claimed in the two original executed proof-of-loss forms for building damages. DeCosta accepted and cashed that check.

DeCosta's adjuster sent Allstate another estimate of building damages on June 14, 2010, that pointed out building damages that were not included in Allstate's proof-of-loss forms and also disputed the valuation of some damages in those forms. As a result, a different Allstate adjuster, Yarri Soteros, met with DeCosta and his adjuster on June 28, 2010, on Allstate's third visit to DeCosta's flood-damaged property.

Soteros's notes from the site visit indicate that she disagreed with Juchnik, DeCosta's adjuster, as to the scope of damages that the SFIP covered;[1] she concluded that DeCosta's policy did not cover many of the items for which he sought compensation. At the site visit, Juchnik informed Soteros that he would appeal to

---

[1] In "claim activity" notes documenting Allstate's adjusters' handling of DeCosta's claim, Soteros indicated that the inspection of DeCosta's property would only determine the scope of damages that the SFIP covers; resolution of any pricing disputes would require further documents, such as the receipts from repairs to the property.

FEMA if Allstate denied coverage of various building repairs he listed.[2]

The day after the site visit, Soteros called an Allstate agent to "discuss the . . . claim issues and partial denials for [DeCosta's claim for additional damages]." Soteros's notes indicate that DeCosta's claim remained "pending" while she awaited additional "documentation" from Juchnik. Between July and November of 2010, Soteros left at least 14 messages for Juchnik requesting that he submit additional documents that she needed to process DeCosta's claim for supplemental damages.

While Soteros received a couple of emails from Juchnik in late September, she eventually transferred DeCosta's claim to another adjuster on November 15, 2010, because she had not received all of the documents required to finish processing it. In mid-November, Juchnik sent Allstate a list covering the amount of loss for personal property.

Allstate's adjuster finished reviewing DeCosta's claim for personal property loss, as well as his claim for additional building damages, and sent DeCosta two more proof-of-loss forms in late November. The first was largely for damaged contents -- or

---

[2] FEMA offers three mechanisms that policyholders can use to dispute the handling of their flood insurance claims: 1) appeal to FEMA; 2) seek an appraisal if the dispute concerns "actual cash value" or "replacement cost" of damaged property; and 3) file suit in a United States District Court. See 44 C.F.R. § 62.20 (appeal to FEMA); 44 C.F.R. pt. 61, app. A(1), art. VII(P), (R) (appraisal and lawsuit, respectively).

personal property -- totaling $41,221.52; however, $126.78 of that amount covered additional building damages. The second was for recoverable depreciation of $7,539.98.

Allstate received back from DeCosta those two executed proofs of loss on or about December 15, 2010, more than sixty days after the flood damaged DeCosta's property at the end of March 2010. Those proofs of loss were untimely. See 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4) (requiring policyholder to submit proof of loss within sixty days after flood).

Allstate requested a waiver of the sixty-day time limit for these two proofs of loss from FEMA on December 22, 2010. FEMA approved the proof-of-loss waiver that same day, and Allstate also paid the $48,761.50 claimed in the second set of proofs of loss on December 22, 2010. This appeal concerns only claims for additional building damages; DeCosta does not seek any further compensation for damaged personal property.

As a matter of law, a flood insurance claim is not payable until both: 1) the policyholder and insurer agree on the amount of damages; and 2) the insurer receives the policyholder's "complete, accurate, and signed Proof of Loss." NFIP Handbook at 6.[3]

---

[3] Other cases involving federal flood insurance policies indicate that claims filed without a proof of loss can be "closed without payment consistent with the terms of the policy." Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 173 (2d Cir. 2012) (internal quotation mark omitted).

DeCosta acknowledges that his adjuster, Juchnik, and Allstate never agreed on the amount of building damages he was owed under the policy. What is clear is that Allstate only sent DeCosta proof-of-loss forms for the amount of damages to which it agreed DeCosta was entitled. These were the only documents that DeCosta submitted which met the requirements of a proof of loss.

Because DeCosta believed he could recover around $200,000.00 in building damages under the policy, but Allstate paid him only about half that amount -- or $102,785.81 -- DeCosta sued Allstate in March 2011 for the difference.[4]

B.      District Court Proceedings

DeCosta filed suit against Allstate in Rhode Island Superior Court on March 18, 2011, alleging among other things that Allstate's actions constituted a breach of contract. Allstate removed the case to the Rhode Island U.S. District Court. DeCosta then sought an appraisal.

In opposing DeCosta's motion to compel appraisal and in its own summary judgment motions, Allstate made two arguments. First, DeCosta's claim for additional recovery under the policy for building damages is barred because he failed to comply with the

---

[4] DeCosta never pursued an appeal of Allstate's final claim determination to FEMA. Any such appeal must be filed within sixty days of the date of the decision being appealed, 44 C.F.R. § 62.20(e)(1), whereas a lawsuit can be filed as late as one year from the date of decision, see 44 C.F.R. pt. 61, app. A(1), art. VII(R). DeCosta sued Allstate on March 18, 2011, which is just over sixty days after Allstate issued its final payment to DeCosta.

-8-

SFIP's proof-of-loss requirement as to those damages. Second, DeCosta could not invoke the SFIP's appraisal clause because the parties disagreed about the scope of damages covered under the SFIP, not just the value of those damages. Indeed, these themes were consistently sounded by Allstate throughout the litigation, and DeCosta does not contend otherwise.

The district court rejected Allstate's arguments and granted DeCosta's motion to compel appraisal, saying that it thought the parties' dispute concerned the "value of loss" rather than what the policy covers. In so concluding, the district court ignored substantial evidence, including claim processing notes from Allstate's adjusters, which reveals the parties' disagreement as to the scope of coverage under DeCosta's policy. However, the district court retained jurisdiction to give Allstate an opportunity to seek judicial determination of any "overall coverage issue prior to the appraisal process." Thereafter, the district court also denied Allstate's summary judgment motion and rejected its proof-of-loss argument in one sentence, stating only that it "finds that [DeCosta] timely filed the proof of loss [as] required by the policy."

The district court directed the parties to proceed to appraisal, ordering them to "instruct the appraisal panel to separate in any award any damages [alleged] by [Allstate] to be

beyond the[] policy coverage . . . so as to preserve such for later Court review if necessary."

The three appraisers on the panel concluded that DeCosta's building damages totaled $205,000.00. After deducting the $102,785.81 that Allstate had already paid DeCosta for building repairs, as well as other related costs, the final award came out to $99,805.67. Allstate filed a second summary judgment motion and moved to strike the appraisal award. DeCosta moved to confirm that award.

The district court confirmed the appraisal award. Although the appraisers' signed memorandum stated that they would "solely [determine] the actual cash value/replacement cost" of DeCosta's property, thereby disclaiming any decision over policy coverage determinations, the district court found significant that the "appraisers did not specifically separate any . . . out-of-scope damages." The court rejected Allstate's argument that the appraisers implicitly made decisions about the scope of damages covered under the policy -- in violation of the SFIP -- because the damages they included in their loss calculations were much broader than the type of damages included in Allstate's pre-appraisal estimate.

The district court also denied Allstate's second summary judgment motion and stated in a footnote that Allstate had waived its argument that DeCosta had not preserved his claim for

additional damages by failing to comply with the SFIP's proof-of-loss requirement "[b]ecause Allstate did pay on the allegedly improperly filed claim."  Notably, neither party argued that Allstate had waived this requirement, nor does DeCosta so contend on appeal.  In a final judgment, the district court ordered Allstate to pay DeCosta the appraisal award of $99,805.67. Allstate timely appealed.

## II.

This court reviews a denial of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party.  Colon v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013).  Neither party suggests that there are disputed material facts that would warrant remand.

A.      Strict Compliance with the SFIP's Proof-of-Loss Provision

Under the NFIP, the federal government provides subsidized flood insurance to fill a gap in the private insurance market.  See 42 U.S.C. § 4001(b).  In administering the NFIP, FEMA creates regulations that govern the process of adjusting, approving, and paying claims for flood loss.  Id. § 4019.  In 1983, FEMA created the Write-Your-Own (WYO) program by which private insurers, such as Allstate, can and do issue flood insurance policies under the NFIP.  McGair, 693 F.3d at 96.  These private insurers are often called "WYO companies."  See id. Although FEMA can issue policies directly, currently about ninety-five percent of

the NFIP's flood insurance policies are issued by WYO companies. See Mun. Ass'n of S.C. v. USAA Gen. Indem. Co., 709 F.3d 276, 280 (4th Cir. 2013).

FEMA has promulgated regulations under 44 C.F.R. pt. 61 that dictate the terms of the standard flood insurance policies, or SFIPs, which private insurers can issue on its behalf. McGair, 693 F.3d at 96. By regulation, WYO companies must issue identical SFIPs, and "no provision of [an SFIP] shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." Id. (quoting 44 C.F.R. § 61.13(d)) (internal quotation mark omitted).

Under the SFIP, the first step that policyholders must take to recover their loss from flood damages is give their insurer "prompt written notice" of that flood loss. 44 C.F.R. pt. 61, app. A(1), art. VII(J)(1). This initial notice provision is distinct from the requirement that policyholders timely submit a signed and sworn proof of loss. Gowland v. Aetna Flood Ins. Program, 143 F.3d 951, 954 (5th Cir. 1998); compare 44 C.F.R. pt. 61, app. A(1), art. VII(J)(1), with id. art. VII(J)(4).

This dispute centers on whether DeCosta, as to the sums he seeks, complied with the SFIP's proof-of-loss requirement, which states:

> In case of a flood loss to insured property,
> you [insured] must: [. . .]

4. Within 60 days after the loss, <u>send us a proof of loss, which is your statement of the amount your are claiming under the policy signed and sworn to by you,</u> and which furnishes us with the following information:

> a. The date and time of loss;
> b. A brief explanation of how the loss happened;
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d. Details of any other insurance that may cover the loss;
> e. Changes in title or occupancy of the covered property during the terms of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgages or anyone else having a lien, charge, or claim against the insured property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described in J.3 above.

44 C.F.R. pt. 61, app. A(1), art. VII(J)(4) (emphasis added).

Notably, under the SFIP, insurance companies can reject policyholders' proofs of loss in favor of their own adjusters' estimate of damages. <u>Id.</u> art VII(J)(9). Where there is disagreement about the amount of flood damages or coverage, the SFIP allows policyholders to appeal to FEMA from any denial of their claims or to contest it in federal court. <u>See</u> 44 C.F.R. § 62.20; <u>id.</u> pt. 61, app. A(1), art. VII(R). However, to invoke either procedure for review of the denial of a flood insurance claim, a policyholder must have first filed a timely and compliant

-13-

proof of loss. See 44 C.F.R. § 62.20; id. pt. 61, app. A(1), art. VII(R).

On appeal, the parties dispute whether DeCosta's submissions to Allstate complied with the SFIP's proof-of-loss requirement such that he is eligible to both bring suit and recover under his policy.

Allstate argues that under the SFIP every "dollar sought must be supported by a proof of loss." Allstate paid DeCosta the amounts of money he claimed, signed, and swore to in four proof-of-loss forms. In doing so it did not, and as a matter of law could not, waive the requirement of a timely proof of loss for additional sums sought. DeCosta's failure to submit a signed proof of loss for the money he seeks to recover in this lawsuit bars his recovery.

DeCosta argues that he complied with his SFIP when he submitted Allstate's proof-of-loss forms as to the amounts paid, writing "undisputed" on each form, and simultaneously submitted a separate sixteen-page estimate from his adjuster, which listed total building damages of $212,071.32, albeit not signing and swearing to it. He claims that the submission of his adjuster's estimate, along with the completed proofs of loss, "preserv[ed] a claim for the value of loss in excess" of the $102,659.03 signed and sworn to in an executed proof-of-loss form. This argument fails as a matter of law.

-14-

DeCosta's SFIP is not an ordinary insurance policy; rather, his SFIP's provisions are also embodied in FEMA's codified regulations, see McGair, 693 F.3d at 96, and interpretation of DeCosta's SFIP is a matter of federal law, id. at 99. The SFIP states, "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." 44 C.F.R. pt. 61, app. A(1), art. VII(R). We have already held that federal law mandates strict compliance with the SFIP, including its proof-of-loss requirement. McGair, 693 F.3d at 100-01. So have other circuits. See Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 175 (2d Cir. 2012) (enforcing strict compliance with SFIP in accordance with its sister circuits that "have uniformly held that [SFIP's proof-of-loss requirement] must be strictly construed and enforced").

A number of reasons compel strict compliance with the SFIP terms even where a lesser form of compliance might suffice under state law governing other insurance disputes. As we have said,

> The NFIP is administered by [FEMA] and backed by the federal treasury, which is responsible for paying claims that exceed the revenue generated by premiums paid under policies issued pursuant to the program. . . . Thus, when private companies [in the WYO program issue SFIPs], they "act as fiscal agents of the United States, but they are not general agents. . . . In essence, the insurance companies serve as administrators for the federal program. It is the [g]overnment, not the companies, that pays the claims."

-15-

McGair, 693 F.3d at 95-96 (second omission in original) (citations omitted) (quoting Palmieri v. Allstate Ins. Co., 445 F.3d 179, 183-84 (2d Cir. 2006)) (internal quotation marks omitted); see also 42 U.S.C. § 4017(a) (establishing the National Flood Insurance Fund, located in the Treasury, to make payments required to carry out the NFIP).

Because the federal government is liable for claims brought under SFIPs issued by private insurers,[5] the Constitution mandates strict compliance with the SFIP. The Supreme Court has "recognized that the Appropriations Clause prohibits the judiciary from awarding claims against the United States that are not authorized by statute." Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 391 (9th Cir. 2000) (citing Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 424, 434 (1990)); see U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law").

---

[5]    It is not just a theoretical possibility that the government might incur liability for flood losses that exceed revenue from written premiums. See Felicity Barringer, Eric Lipton & Mary Williams Walsh, Flood Insurance, Already Fragile, Faces New Stress, N.Y. Times, Nov. 12, 2012, http://www.nytimes.com/2012/11/13/nyregion/federal-flood-insurance-program-faces-new-stress.html?pagewanted=all&_r=0 (documenting the "giant debt" that the NFIP owes the Treasury); Raymond Hernandez, Congress Passes a $9.7 Billion Storm Relief Measure, N.Y. Times, Jan. 4, 2013, http://www.nytimes.com/2013/01/05/nyregion/house-passes-9-7-billion-in-relief-for-hurricane-sandy-victims.html (reporting that Congress adopted a bill authorizing the NFIP to borrow $9.7 billion needed to pay claims caused by Hurricane Sandy and other disasters).

Here, "Congress, through a valid act of delegation to FEMA, has authorized payment of flood insurance funds to only those claimants that submit a timely sworn proof of loss."  Flick, 205 F.3d at 394.  As a result, it would "usurp Congress's exclusive power to appropriate money were [federal courts] to award an unauthorized money claim based on a theory of substantial compliance" with the SFIP's proof-of-loss requirement.  Id. at 391.

Enforcing strict compliance with the SFIP also arises from the doctrine of sovereign immunity.  Given that it is the government's liability at stake in any suit against a WYO insurer, compliance with the proof-of-loss provision serves as a "condition[] precedent to a waiver by the federal government of its sovereign immunity."  Wagner v. Dir., Fed. Emergency Mgmt. Agency, 847 F.2d 515, 518 (9th Cir. 1988).  As we have explained, "[i]t has long been established that the [government] is not subject to suit without a waiver of sovereign immunity, and that any such waiver is to be strictly construed."  Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996).  Where waiver depends on compliance with the terms of a federal insurance policy, it follows that the terms of that policy must also be strictly construed and enforced.  See Mancini v. Redland Ins. Co., 248 F.3d 729, 734-35 (8th Cir. 2001).

In Phelps v. Federal Emergency Management Agency, 785 F.2d 13 (1st Cir. 1986), we upheld strict compliance with the

-17-

SFIP's written proof-of-loss requirement and refused to apply the equitable estoppel doctrine against the government although "elements of traditional estoppel [were] plainly present." Id. at 16-17, 19. "[C]onsiderations of sovereign immunity and constitutional grounds -- [such as] the potential for interference with the separation of governmental powers" - motivated our refusal to apply equitable estoppel against the government, "no matter how compelling the circumstances." Id. at 17.

The need for uniformity in federal law also supports strict construction of the SFIP. Such uniformity provides clarity to the numerous insurance companies issuing the bulk of insurance policies under the NFIP, as well as the diverse jurisdictions inundated with flood insurance disputes in the aftermath of national disasters. Insurance companies and policyholders need clear rules to ensure a fast response to policyholders' claims after these disasters. Relatedly, we noted in Phelps that Congress established the NFIP because many factors made it uneconomical for private insurance companies to offer affordable flood insurance. 785 F.2d at 14; see also 42 U.S.C. § 4001(a), (b). "[A] rule of strict compliance . . . avoid[s] disturbing the delicate balance, which FEMA has sought to strike, between the need to pay claims and the need to ensure the long term sustainability of the NFIP" in this economically fraught area. Flick, 205 F.3d at 396.

Strictly construing the SFIP's proof-of-loss provision, see McGair, 693 F.3d at 100-01, it is clear that DeCosta did not sign and swear to claiming $212,071.32 on a proof of loss, as required. Merely attaching his adjuster's estimate of damages to two executed proof-of-loss forms claiming a smaller amount does not comply. See 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4). The law on this is clear, as we describe.

In Mancini, an insurance company sent the Mancinis a proof-of-loss form documenting their flood damages under the SFIP. 248 F.3d at 732. The Mancinis did not sign or notarize the proof of loss, but faxed it to their insurance company with a hand-printed cover sheet that included a note with their names on the bottom. Id. The insurance company conceded that the fax submission "contained the relevant information" but disputed whether it conformed to the SFIP's requirement of a statement of the amount claimed under the policy that is "signed and sworn by the insured." Id. at 734 (emphasis added). The Eighth Circuit held that the Mancinis did not comply with the SFIP's proof-of-loss provision, observing that their "signature does not appear on a statement by the Mancinis as to the amount they claimed under the policy." Id. Thus, they failed to sign and swear to the amount they sought to recover.

In Evanoff v. Standard Fire Insurance Co., 534 F.3d 516, 520-21 (6th Cir. 2008), the Sixth Circuit adopted the Eighth

Circuit's reasoning in Mancini. It held that a policyholder failed to comply with the SFIP where he submitted all of the supporting documentation required in the proof-of-loss provision, along with a letter that contained his signature. Id. The Evanoff court explained that the policyholder was "required to do more than merely submit a set of figures together with a signed statement not rejecting or nullifying those figures. [He] had to submit a signed statement as to the amount claimed under the policy. [He] simply did not do so." Id. at 520 (quoting Mancini, 248 F.3d at 734-35) (internal quotation mark omitted).

Here, DeCosta's signature on Allstate's two proof-of-loss forms for building damages claims only the amounts listed in those forms. His policy made clear that these forms are provided only as a courtesy, warning policyholders that they are responsible for submitting a timely proof of loss if their insurer's adjuster does not supply them with a form.[6] 44 C.F.R. pt. 61, app. A(1), art. VII(J)(7).

While the SFIP does not require that a proof of loss follow any particular format, it "define[s] a proof of loss as a statement of the insured, not of some third party, and it does

---

[6] The model proof-of-loss form that FEMA published online leaves blank spaces for policyholders to indicate the "full cost of repair or replacement (Building and Contents)", as well as the "net amount claimed under the . . . policy." Fed. Emergency Mgmt. Agency, Proof of Loss (Rev. Oct. 2010), available at http://www.fema.gov/media-library-data/20130726-1601-20490-7838/086_0_9_previously_ff81_42.pdf [hereinafter Proof of Loss].

-20-

require that the insured sign and swear to that statement." Mancini, 248 F.3d at 734. That was not done here as to the sums claimed in the litigation. See id. at 735 ("[I]t is the insured, not the adjuster, who must swear to the proof of loss."); 44 C.F.R. Pt. 61, App. a(1), Art. VII(J)(5) (requiring policyholders to "use [their] own judgment concerning the amount of loss" when completing the proof of loss).

At oral argument, DeCosta's counsel explained that he was not arguing that equitable estoppel or waiver barred enforcement of the proof-of-loss requirement. Nor was he arguing that DeCosta substantially complied with the SFIP. Instead he asserted that the estimate claiming $212,071.32 in damages from DeCosta's adjuster satisfied the SFIP's proof-of-loss requirement under a stringent, strict construction standard because it was contemporaneously submitted with two proof-of-loss forms. He suggests this case is different from other cases finding noncompliance with the SFIP's proof-of-loss provisions because the adjuster's estimate of disputed damages accompanied timely, executed proof-of-loss forms as to undisputed amounts. Not so. It does not matter that the estimate from DeCosta's adjuster was submitted at the same time and along with compliant proof-of-loss forms claiming undisputed sums because, under the plain terms of the SFIP, DeCosta still had to sign and swear to the amount in that estimate, which he did not do.

-21-

As counsel for Allstate argued, the attestation serves the purpose of reducing fraud.[7]  This is a common-sense conclusion drawn from the language of FEMA's model proof-of-loss form itself.[8]

Even if equitable considerations could play some role, we reject DeCosta's plaint of lack of notice.[9]  The fact that Allstate

_____

[7]  The NFIP's Adjuster Claims Manual notifies adjusters that "[f]raud or misrepresentation is a continuing problem in the [NFIP]."  Nat'l Flood Ins. Program, Adjuster Claims Manual x-1 (Rev. Jun. 2010), available at https://www.nfipservices.com/uploads/AdjusterClaimsManual.pdf. The Federal Bureau of Investigations has also examined flood insurance fraud, commenting that of the $80 billion in government funding that was appropriated to reconstruction after Hurricane Katrina, "it is estimated that [i]nsurance [f]raud . . . accounted for as much as $6 billion."  Fed. Bureau of Investigations, Reports and Publications:  Insurance Fraud, http://www.fbi.gov/stats-services/publications/insurance-fraud (last visited Sep. 17, 2013).

[8]  FEMA's model proof-of-loss form warns policyholders in bold lettering that willfully making false answers or factual misrepresentations in a proof of loss is punishable by a fine or imprisonment.  It also includes an attestation whereby policyholders "declare under penalty of perjury" that the information in their proof of loss is "true and correct." Proof of Loss.

[9]  The NFIP's Flood Insurance Claims Handbook was created by FEMA to explain the process of filing a flood insurance claim to policyholders.  See NFIP Handbook.  The handbook not only tells policyholders that they are the ones responsible for submitting a "signed" proof of loss, see NFIP Handbook at 6, but it also details the process for seeking additional damages beyond those sought in an initial claim, stating:

> If you notice additional damage to your Building Property or Personal Property after filing your claim, you may file a Supplemental Claim.  This means, essentially, that you must repeat the documentation and filing process for your original claim, including a Proof of Loss -- but only for the newly discovered damage.

provided DeCosta with two separate proof-of-loss forms for building damages and the cost of related depreciation, if anything, should have put DeCosta on additional notice that he needed to sign and swear to every dollar he claimed under the SFIP.

"[W]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." McGair, 693 F.3d at 100 (emphasis added) (quoting Jacobson, 672 F.3d at 175) (internal quotation marks omitted). Other circuits enforcing strict compliance with the SFIP have noted the Supreme Court's mandate: "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of the law." Jacobson, 672 F.3d at 175 (quoting Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 63 (1984)) (internal quotation mark omitted).

Thus, the district court erred as a matter of law in holding that DeCosta had filed a proof of loss that complied with his SFIP for the additional payment he seeks to recover.

---

NFIP Handbook at 7 (emphasis added). This explains that the insured must provide a signed proof of loss for every dollar sought.

Allstate's adjusters' notes indicate that DeCosta was given this handbook at the first site visit to his insured property, and DeCosta does not say otherwise. The adjuster who visited DeCosta's property in response to his request for more building damages also discussed the handbook with him and confirmed that he had received it at the initial site visit.

B.        <u>Waiver under the SFIP</u>

In ruling on Allstate's second summary judgment motion, the district court noted in a footnote:

> Allstate also argues . . . that Mr. DeCosta failed to preserve his claim for further damages above the amounts Allstate has already paid by failing to submit a signed proof of loss for such additional amounts as required by SFIP Art VII(J)(4) so therefore his claim is barred. <u>Because Allstate did pay on the allegedly improperly filed claim, the Court finds that this argument has been waived.</u>

This was also an error of law. To the extent that the district court considered all documents filed to relate to a single claim, and thereby reasoned that payment of the properly filed sums, as a portion of DeCosta's total "claim," could serve to waive any dispute as to the remainder, we reject this interpretation. Mere payment of claims properly submitted in a proof of loss does not waive objections to further sums not submitted as required by the SFIP's proof-of-loss provision. Even DeCosta agrees that Allstate did not waive the proof-of-loss requirement for the additional amount he seeks to recover in this suit.

FEMA must provide express written consent for Allstate to waive any of the requirements outlined in DeCosta's SFIP. The SFIP's waiver provision states, "[t]his policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action we take

-24-

under the terms of this policy constitutes a waiver of any of our rights." 44 C.F.R. pt. 61, App. a(1), Art. VII(D).

The SFIP's stringent waiver provision reflects the fact that private insurers are "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), as opposed to general agents. See McGair, 693 F.3d at 96. Thus, consistent with their duty to strictly enforce the SFIP, private insurance companies can "[vary] the terms of a policy only with FEMA's express written consent." Jacobson, 672 F.3d at 175. This circuit has previously enforced the written waiver requirement, noting that the SFIP "explicitly preclude[s] oral waiver or waiver by conduct." Phelps, 785 F.2d at 19. The district court's reasoning violates Phelps.

Where Allstate did pay claims for damaged personal property that DeCosta submitted in untimely proof-of-loss forms, Allstate solicited the required written waiver from FEMA before paying on those noncompliant proofs of loss. No such express written consent from FEMA waived the proof-of-loss requirement for the unsigned and unsworn estimate from DeCosta's adjuster.

As a result, DeCosta cannot sue to recover the difference between his adjuster's estimate and the amount of money that Allstate has already paid him for flood damages to his building. See Phelps, 785 F.2d at 19 ("[F]ailure to submit a written proof of loss, coupled with the absence of a waiver of this requirement by FEMA, constitutes a valid defense to recovery on the [flood]

-25-

insurance policy."); 44 C.F.R. pt. 61, app. A(1), art. VII(R) (requiring that policyholders fully comply with SFIP before they file suit).

Because DeCosta's failure to comply with the SFIP bars any recovery under his policy, it is clear that the district court should not have ordered the parties to proceed to appraisal.

Given our resolution of this appeal, we need not address whether the parties' dispute over coverage issues precluded DeCosta from invoking the SFIP's appraisal clause. Nor need we decide whether the district court abused its discretion in denying Allstate discovery.

### III.

Accordingly, we reverse with instructions that the district court enter summary judgment in Allstate's favor and vacate any orders that are inconsistent with this opinion. No costs are awarded.